UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X

Kirk Burrowes,                                      Index No.:  25-1618

                                                    Civil Action

                    Plaintiff,                      Jury Trial Requested

          -against-

Janice Smalls (aka Janice Combs),
James Doe 1,
Lawyer Doe 1,
ABC Company 1,
John and Jane Does 1-10, and
ABC Corporations 1-10,
                    Defendants.

----------------------------------------------X

## COMPLAINT

Plaintiff Kirk Burrowes (hereinafter referred to as "Plaintiff"), by and through his attorney, Tyrone A. Blackburn, Esq., of T. A. Blackburn Law, PLLC, as and for his Complaint against Defendants Janice Smalls (aka Janice Combs), Lawyer Doe 1, James Doe 1, ABC Company 1, John and Jane Does 1-10, and ABC Corporations 1-10 (hereinafter referred to as "Defendants"), alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

1. This case arises from an elaborate and calculated scheme executed by Defendant Janice Smalls, in collusion with Sean Combs, Kenneth Meiselas, Esq., and others, to illegally seize Plaintiff, Kirk Burrowes' 25% ownership interest in Bad Boy Entertainment Holdings, Inc. ("BBE"), a New York Corporation, and his 15% share of BBE's annual earnings—thereby depriving him to access of his equitable financial interests and benefits, derived from both Plaintiff and Defendants operation of  BBE.

2. Plaintiff, an integral co-founder  and  executive of BBE, contributed significant financial investments, industry expertise, and leadership, to BBE. Through his efforts, Plaintiff helped the company evolve from an amateur startup entity to a global music powerhouse. Rather than honoring their  contractual  obligations, Defendants exploited  Plaintiff's trust,  by misrepresenting key business dealings, minimizing and erasing his pivotal role in BBE's global

1

success, and by implementing coordinated coercion and deceit tactics to defraud him out of his contractually acquired and earned beneficial ownership in, and compensation from his efforts with BBE, thereby further depriving Plaintiff of access to his equitable financial interests and benefits derived from both Plaintiff and Defendant's operation of BBE.

3. Defendant Smalls engaged in a decades-long scheme of intimidation, violence, fraudulent misrepresentation, and financial concealment to strip Plaintiff of his rightful ownership interest in and to BBE. One appalling example of Defendant's egregious conduct stems from an incident that occurred in 1996. Specifically, in May 1996, with Defendant Small's knowledge, Sean Combs, Son of Defendant Smalls, stormed into Plaintiff's office located in a highly populated commercial office space within BBE, accompanied by Kenneth Meiselas, Esq. while Plaintiff was working. During this incident Defendant Small's son, Mr. Combs, made threatening statements while erratically wielding a baseball bat. Defendant Small's son, Mr. Combs, then presented a contract to Plaintiff, which he had never seen before. Plaintiff, under extreme duress and in justified fear for his physical safety and life, did not read the contract, but nevertheless signed the contract presented without the guidance of proper legal representation. He later discovered his signature on the aforesaid contract conveyed away his rightful 25% ownership interest in and to BBE.

4. Defendant Smalls, acting individually and in concert with Kenneth Meiselas, Esq., her son Sean Combs, James Doe 1, Lawyer Doe 1, and other unknown co-conspirators engaged in an egregious and unlawful campaign of coercion, deceit, and misrepresentation in a concerted effort to unjustifiably wrest away Plaintiff's 25% ownership interest in and to BBE, and to appropriate Plaintiff's compensation, benefits, and intellectual property, which were all derived from his decades-long contributions to BBE.

5. Over a span of decades, Defendant Smalls continuously deceived Plaintiff, by concealing her role in the illegal and violent transfer of Plaintiff's 25% ownership interest in and to BBE, inclusive of BBE stock. Defendant Smalls fraudulent concealment of her role in BBE and her involvement with the aforesaid incident that took place in May 1996, which deprived Plaintiff of significant financial compensation and employment benefits, and caused him irreparable personal, psychological, and professional harm.

6. Upon information and belief, Defendant Smalls profited immensely from her conspiracy with her son, Sean Combs, Kenneth Meiselas, Esq., James Doe 1, Lawyer Doe 1, and other unknown

co-conspirators leaving Plaintiff destitute, homeless, and excluded from BBE, a company he co-created and provided significant financial contributions to, without which BBE would not have attained the global success it currently holds.

7. As recently as 2021, Defendant Smalls further exploited Plaintiff's trust. Specifically, Defendant Smalls, solicited Plaintiff's expertise and assistance with respect to the development of a historical documentary about the history of BBE. Plaintiff, still unaware of Defendant Smalls' unlawful campaign of coercion, deceit, and misrepresentation which lead to his ousting at BBE, hesitantly agreed to provide his assistance. Defendant Smalls subsequently reneged on their agreement of compensation and collaboration in connection with the BBE documentary, thereby perpetuating a pattern of exploitation, coercion, and deceit.

8. For years, Defendants misled Plaintiff, falsely reassuring him that they would rectify the theft of his ownership interest while actively concealing the unlawful involuntary transfer of Plaintiff's 25% ownership interest in an to BBE to third-parties. In 2019, at Diana Ross's VIP Event, Defendant Smalls' son, Sean Combs admitted to the wrongdoing that he and his mother, Defendant Smalls, engaged in that lead to the incident that occurred in 1996, claiming that they needed to "make things right." However, this was yet another strategic delay tactic, as no corrective action was ever taken.

9. Defendants not only defrauded Plaintiff of his rightful ownership interest in and to BBE by effectuating the involuntary transfer, they also systematically sabotaged Plaintiff's career. Defendants "blacklisted" (as that term is commonly known in the music and entertainment industries) him from various music industry events, companies, gatherings, and business opportunities. Additionally, they engaged in a concerted effort to destroy his professional reputation, in which they succeeded. Defendants' concerted efforts ensured Plaintiff would no longer have income security and would remain financially destitute and unable to reclaim what was rightfully his.

10. Defendants not only defrauded Plaintiff of his rightful stake in BBE but also systematically sabotaged his career. They blacklisted him from the music industry, blocked business opportunities, and destroyed his professional reputation, ensuring he would remain financially destitute and unable to reclaim what was rightfully his.

11. Furthermore, Defendants deliberately misused corporate assets, engaged in corporate waste and financial mismanagement by directing company funds be used for luxury personal

expenses, unauthorized real estate transactions, and fraudulent business deductions—directly impacting Plaintiff's 15% profit share, which caused Plaintiff substantial financial harm. Defendants' actions all but obliterated the so-called "corporate veil".

12. Plaintiff now seeks reprieve for the egregious injustices and deliberate wrongdoings leveraged against him. This lawsuit seeks compensatory and punitive damages, equitable remedies, and all other relief deemed just and proper to address Defendants' fraudulent, deceptive, and unlawful conduct. Specifically, reinstatement of Plaintiff's full 25% ownership interest in and to BBE, compensatory damages for his 15% profit share plus accrued interest, an independent forensic financial audit of BBE's earnings from its inception to the present, and injunctive relief to prevent further exploitation.

## PARTIES

13. Plaintiff, Kirk Burrowes, is a renowned executive in the music and entertainment industries and co-founder of BBE and was contractually entitled to 25% ownership in and to BBE and a 15% share of BBE's annual earnings.

14. As the co-founder of BBE, Plaintiff was instrumental in shaping the company's success, serving as its Chief Operating Officer and General Manager.

15. Plaintiff dedicated his curated expertise, time, and substantial resources to BBE, including managing daily operations, overseeing artist development, and contributing to the BBE's overall strategic growth.

16. Defendant Janice Smalls (aka Janice Combs) is a resident of Miami, Florida.

17. She is the alleged "mother" of Sean Combs and a key figure in the inception of BBE. Defendant Smalls was the business partner of Plaintiff, and owned 75% ownership interest in and to BBE, while Plaintiff owned the remaining 25%.

18. Defendant Janice Smalls knowingly participated in the fraudulent scheme to obtain 100%control of BBE. She falsely denied receiving Plaintiff's 25% shares until 2024, when records revealed her role in the involuntary transfer of Plaintiff's ownership interest in and to BBE in May of 1996.

19. Defendant Smalls held significant influence over BBE's affairs and, as alleged, knowingly conspired to deprive Plaintiff of his ownership interest in and to BBE. She benefited

substantially from the actions of her son, Sean Combs, while misrepresenting her involvement said actions[1].

20. Defendant Lawyer Doe 1 is an attorney licensed to practice law in the State of New York. He served as legal counsel to BBE and Defendant Small's son, Sean Combs, playing a central role in orchestrating and executing the scheme to deprive Plaintiff of his ownership interest in and to BBE.

21. Defendant Lawyer Doe 1 leveraged his position of trust and power to facilitate the coercion, conversion, and involuntary transfer of Plaintiff's ownership interest in and to BBE. Unbeknownst to Plaintiff at the time, Defendant Lawyer Doe 1 colluded with Defendant Smalls to obtain Plaintiff's 25% share of BBE through violence and force.

22. Defendant James Doe 1 is an individual residing in the State of New York. He is a prominent music producer, entrepreneur, and of BBE. Defendant James Doe 1 played a central role in the company's formation and operations.

23. Defendant James Doe 1 directly participated in the alleged wrongful acts, including the coercion and involuntary transfer of Plaintiff's 25% ownership interest in and to BBE. As alleged, Defendant James Doe 1 used threats of physical violence to force Plaintiff to relinquish his ownership interest and conspired with Defendant Janice Smalls and Lawyer Doe 1 to deprive Plaintiff of his rightful property and financial benefits.

24. ABC Company 1 is a record label founded in the state of New York.

25. Defendants John Does 1-10, Jane Does 1-10, and Corporations 1-10 are individuals and entities whose identities are currently unknown. These parties acted in concert with the named Defendants to carry out the fraudulent scheme and other wrongful acts described herein.

26. Upon information and belief, these unnamed Defendants include associates, agents, and business entities connected to the named Defendants who participated in or benefited from the wrongful conduct.

## JURISDICTION AND VENUE

27. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

---

[1] As of the date of this filing Sean Combs has been indicted by the United State Attorney's Office for the Southern District of New York on Criminal RICO allegations.

28. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1367(a) as the claims herein arise out of the same nucleus of operative facts.

29. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

30. Specifically, many of the business activities and wrongful acts carried out by Defendants occurred within this jurisdiction, and Defendants conducted substantial business in this district.

## FACTUAL BACKGROUND

31. Plaintiff co-founded BBE alongside Defendant Janice Smalls and owned a 25% stake in the business. Plaintiff also served as the BBE's Chief Operating Officer and General Manager, handling operational and management responsibilities integral to the BBE's success.

32. Janice Smalls co-founded BBE with Plaintiff and relied heavily on Plaintiff's managerial expertise and financial resources to establish the company.

33. Despite this, Defendant Smalls reneged on promises of equitable ownership and profit-sharing, choosing instead to exploit Plaintiff's contributions for her financial enrichment.



**Kirk Burrowes General Manager Business Card**

34. Kenneth Meiselas, serving as legal counsel for BBE, played an instrumental role in facilitating the incorporation and operational structuring of the company.



**Plaintiff Burrowes and His BBE Artists and Staff**

35. Meiselas prepared necessary documents, advised Smalls and Burrowes on strategy, and concealed material information related to the allocation of ownership interests, including Plaintiff's agreed-upon 25% equity stake. As well as his 15% share of BBE's annual profits.

36. Defendant Smalls knowingly benefitted from Plaintiff's financial and managerial contributions while deliberately excluding him from ownership rights and profit-sharing.

37. Plaintiff's contributions included significant seed funding, which paid for the services of Bert Padell, a business manager and accountant, and Kenneth Meiselas as the company's attorney.



**Plaintiff and Kenneth Meiselas**

38. Plaintiff personally financed, conceptualized, and executed the foundation of BBE, ensuring its legal incorporation, financial stability, and strategic market positioning. Plaintiff's early investments and business acumen transformed BBE from a conceptual venture into a fully operational and revenue-generating entity. His contributions are corroborated by corporate filings, internal communications, business records, and financial transactions.

39. Official incorporation records confirm that BBE was formally established on June 9, 1992, in New York as a domestic business corporation, with Corporation Service Company designated as the registered agent. Plaintiff played an instrumental role in securing and structuring the company, ensuring it complied with legal and financial requirements.

40. BBE initially operated from 1440 Broadway, New York, NY, a strategic location secured through Plaintiff's direct involvement. Recognizing the need for expanded operations, Plaintiff facilitated the relocation to 1540 Broadway, Floor 30, which allowed the label to increase its industry influence and commercial reach. These records directly corroborate Plaintiff's pivotal role in BBE's corporate development.

41. During the formative years of BBE, Plaintiff dedicated extensive time and resources without compensation, committing himself to structuring the company, building industry relationships,

and securing key deals that solidified BBE's dominance in the music business. His visionary leadership was critical to the company's foundation and trajectory.

42. Plaintiff's executive responsibilities included:

   1. Negotiating and executing artist contracts, securing top-tier talent that fueled BBE's early success.
   2. Managing daily business operations, ensuring fiscal discipline, and establishing corporate policies.
   3. Developing and implementing strategic initiatives that propelled BBE to global prominence.

43. Plaintiff's contributions and ownership interests are meticulously recorded in over 1,000 pages of detailed business journals, corporate filings, and executive communications, since the inception of BBE through his unlawful and involuntary ousting. These records establish his rightful ownership claim and undermine Defendants' fraudulent actions.

44. Defendant Janice Smalls engaged in a pattern of calculated deception, intentionally misrepresenting her role within BBE and the May 1996 incident, while covertly working to exclude Plaintiff from ownership and financial benefits derived from his involvement with BBE.

45. Defendant Smalls, in concert with Sean Combs and Kenneth Meiselas, engaged in a conspiracy to defraud Plaintiff by manipulating legal filings, withholding financial disclosures, and forging internal agreements to systematically remove Plaintiff from decision-making and equity participation.

46. Defendant Smalls exploited Plaintiff's personal and professional trust, regularly seeking his guidance and protection from Sean Combs' volatile and abusive behavior. Plaintiff personally witnessed Combs physically assault Smalls, calling her derogatory slurs, aggressively overpowering her, and demonstrating a pattern of violence and coercive control.

47. Defendant Smalls knowingly aligned herself with Sean Combs and Kenneth Meiselas to orchestrate Plaintiff's involuntary ousting, fully aware that her continued financial enrichment depended on eliminating Plaintiff's legal claim to BBE. She played an active role in executing fraudulent transfers, fabricating legal agreements, and concealing financial transactions.

48. Despite years of verbal assurances and a seemingly deep personal relationship between Plaintiff and Defendant Smalls, she deliberately orchestrated his exclusion, taking full control of BBE's assets and revenue while denying Plaintiff access to the financial rewards of his labor and investments.

49. Plaintiff's initial financial contributions to BBE were critical in covering the company's foundational expenses, including:

   1. Corporate registration and licensing fees required for legal entity formation.
   2. Office space acquisition and operational infrastructure costs.
   3. Legal retainers, business development expenses, and strategic investments.

50. Defendant Smalls directly benefited from these financial outlays, fraudulently maintaining control over corporate funds and assets while systematically denying Plaintiff his rightful equity stake.

51. Defendant Smalls' fraudulent conduct was intentional and malicious, including:

   1. Concealing corporate financial records to obfuscate Plaintiff's equity claims.
   2. Knowingly filing false documentation to facilitate his exclusion.
   3. Misrepresenting ownership structures to third parties and industry stakeholders.

52. As a direct result of Defendants' unlawful actions, Plaintiff has suffered substantial financial losses, reputational harm, and severe emotional distress, including:

   1. The fraudulent deprivation of his 25% ownership interest and 15% share of BBE's annual profits.
   2. Career blacklisting and reputational sabotage orchestrated by Sean Combs and Defendant Smalls.
   3. A complete obstruction of his professional earnings, leaving him in financial ruin.

**Kenneth Meiselas and Sean Combs Engage In Criminal Activity**

53. In May 1996, Sean Combs and Kenneth Meiselas, Esq entered Plaintiff's office. Sean Combs wielded a baseball bat and threatened Plaintiff with physical violence, demanding that he sign over his 25% ownership interest in and to BBE.

54. Plaintiff, fearing for his life, with tears streaming down his face clearly unable to resist under the circumstances, involuntarily signed the documents relinquishing his 25% ownership interest in and to BBE.

55. On this day, Defendant Smalls was absent from the office. Her absence was not normal, as it was customary for her to be in the office daily. Defendant Smalls sat down the hall from Plaintiff.

56. Plaintiff and Defendant Smalls would have strategy sessions, attend meetings together with other label executives, and Plaintiff would provide her with daily updates concerning artist travel, sample clearances, budgeting, etc.

57. After Kenneth Meiselas, Esq. and Sean Combs criminal actions, Plaintiff called Defendant Smalls seeking guidance and assistances. She pretended she was unaware of Kenneth Meiselas and Sean Combs' actions. Plaintiff recently learned that this was a lie.



**Plaintiff in his BBE Office Where Kenneth Meiselas, Esq. and Sean Combs Threatened him with a baseball bat**

58. Although she was not physically present when Kenneth Meiselas, and Sean Combs committed their crime, Defendant Smalls later falsely denied knowledge of or involvement in the coercion and fraudulent involuntary transfer, despite directly benefiting from the wrongful acts.

59. Plaintiff's ownership interest was transferred to Defendant Smalls, resulting in her 100% control of the Label.

60. Kenneth Meiselas and Sean Combs acted in concert with Defendant Smalls to orchestrate the fraudulent involuntary transfer of Plaintiff's ownership interest and concealed material facts to ensure Plaintiff remained unaware of the extent of their conspiracy.

**Plaintiffs Relationship With Sean Combs**

61. Plaintiff Kirk Burrowes was a visionary strategist and business architect of BBE. His relationship with Sean Combs began in the early 1990s, when Plaintiff was introduced to

11

Combs through industry connections who recognized his prowess in talent management, business structuring, and industry negotiations.

62. Recognizing Plaintiff's strategic mind and industry expertise, Sean Combs entrusted him with key operational and managerial responsibilities, leading Plaintiff to co-found BBE and establish its foundational business framework. Plaintiff's influence was instrumental in transforming BBE into a dominant force in the music industry.

63. Plaintiff designed and implemented the business infrastructure that allowed BBE to thrive, ensuring sustainable revenue streams, artist development programs, and long-term strategic planning.

64. Plaintiff designed and implemented the business infrastructure that allowed BBE to thrive, ensuring sustainable revenue streams, artist development programs, and long-term strategic planning.

65. As COO and General Manager, Plaintiff structured high-value contracts, managed production schedules, orchestrated artist development, and created groundbreaking marketing strategies, ensuring Bad Boy's artists achieved mainstream success.

66. Plaintiff was responsible for executing multi-million-dollar deals, fostering artist partnerships, and building Bad Boy's reputation as a major player in the music industry. He was the chief negotiator and business strategist behind many of BBE's biggest commercial successes.

67. Despite Plaintiff's unparalleled contributions, he was systematically deceived and exploited by Sean Combs and Defendant Janice Smalls, who leveraged Plaintiff's trust and loyalty to consolidate power while excluding him from the financial rewards of his labor.

68. Plaintiff was repeatedly promised equity and profit-sharing in exchange for his continued dedication to BBE. Combs and Smalls assured Plaintiff that he would receive 25% ownership and a 15% share of annual profits, yet these promises were made in bad faith, with no intention of fulfillment.

69. Plaintiff turned down lucrative offers from rival labels, including Uptown Records, Elektra Records, and Sony Entertainment, based on Combs' and Smalls' false assurances that he would receive his rightful stake in BBE. Instead, Defendants orchestrated a fraudulent scheme to strip him of his stake while profiting from his work.

70. By 2001, Combs escalated his betrayal and financial sabotage, intentionally interfering with Plaintiff's business relationships and contracts to destroy his ability to generate income.

71. Among the most egregious acts of misconduct, Sean Combs deliberately obstructed Plaintiff's management contract with Mary J. Blige, an artist whom Plaintiff rescued from financial collapse due to Combs' prior mismanagement and fraudulent financial dealings.

72. Combs engaged in fraudulent financial schemes, inflating Mary J. Blige's expense accounts by charging unauthorized expenses, fabricated service fees, and luxury purchases under false pretenses.

73. These illicit transactions included charging personal expenses to artist accounts, such as designer clothing, private jets, luxury vacations, and unauthorized gifts.

74. One of the most egregious examples of financial fraud involved Combs' obsession with Tupac Shakur—he attempted to mimic Tupac's style, purchasing Versace silk shirts and expensive accessories for himself while falsely expensing these purchases to Mary J. Blige's artist account.

75. Plaintiff, as Mary J. Blige's business advisor, exposed and corrected these fraudulent transactions, renegotiated her contracts, and successfully brought her out of financial ruin.

76. Plaintiff was the architect behind Mary J. Blige's resurgence, securing one of her most commercially successful tracks, "Family Affair," by negotiating a production deal with Dr. Dre.

77. As retaliation for Plaintiff's refusal to condone financial misconduct, Sean Combs, aided by Kenneth Meiselas, deliberately orchestrated the termination of Plaintiff's contracts, ensuring that Plaintiff was completely blacklisted from the music industry.

78. Combs and his associates interfered with Plaintiff's business deals, intimidated industry executives, and ensured that Plaintiff was excluded from any new opportunities, effectively crippling his career and financial stability.

79. Defendants' coordinated scheme deprived Plaintiff not only of his rightful earnings but also of his ability to earn a living, forcing him into financial destitution and professional exile.

## Defendant Smalls Contacts Plaintiff For Help
## Creating A BBE Documentary

80. As recently as 2020, Defendant Smalls contacted Plaintiff, seeking his assistance in creating a historical documentary about the Label. In exchange for his Plaintiff agreed and prepared a detailed production treatment, including records, photos, and other evidence from the Label's history.

81. Defendant Smalls used Plaintiff's contributions to advance her project but refused to compensate Plaintiff or include him in the production, breaching their agreement.

82. This conversation was one of many conversations between Plaintiff and Ms. Smalls where Plaintiff questioned her knowledge and involvement with the 1996 stock take over.  As she had done on multiple occasions, Defendant Smalls intentionally lied, denying any knowledge and or involvement.

83. In 2024, Plaintiff, through legal counsel, discovered that Defendant Smalls had been lying about her involvement in the forced involuntary transfer of Plaintiff's ownership interest and that she was the direct beneficiary of the conspiracy orchestrated by Kenneth Meiselas, Sean Combs, and others.

84. As previously stated, Plaintiff was a pivotal figure in the creation and success of BBE. As General Manager and later President, he oversaw operations, corporate management, budgeting, and artist development. Plaintiff dedicated his skills and resources to the company, even personally investing approximately $100,000 to cover operational expenses between 1992 and 1994.

85. Plaintiff's compensation was initially minimal, starting at $30,000 annually, despite the company generating significant profits. Plaintiff was contracted to receive 15% of the company's profits and a 25% equity stake as compensation for his role in BBE's establishment and success. This contract was consistently reiterated by Sean Combs but never honored.

86. Despite contributing significantly to BBE's growth, Plaintiff was subjected to intimidation and coercion.

87. As previously stated, in May 1996, Defendants, through threats of physical harm, forced Plaintiff to relinquish his 25% equity interest in the company.  The location of this incident was on West 19th Street in New York City. This was achieved through a calculated and coordinated effort involving Kenneth Meiselas and Sean Combs.

88. Upon information and belief, due to her decades of feign ignorance and deceptive denials, Plaintiff believes Kenneth Meiselas was acting under Defendant Smalls' direction.

89. When Sean Combs and Kenneth Meiselas entered the Plaintiffs offices, Sean Combs was carrying a baseball bat. By words and actions, Sean Combs and Kenneth Meiselas frightened and intimidated and assaulted Plaintiff and forced him to turn over his share certificate for 25 shares of BBE to Sean Combs who then transferred them to Janice Smalls.

90. Upon information and belief, Janice Smalls signed the certificates, filed them with the appropriate government entities.

91. In addition to obtaining the share certificate by threats and intimidation, Sean Combs and Kenneth Meiselas intimidated and coerced Plaintiff into signing documents releasing Plaintiff of his equity interest in BBE.

92. Even after the coerced transfer, Defendants continued to exploit Plaintiff's skills and resources, leveraging his contributions to further enrich themselves. Defendant Smalls, under false pretenses, solicited Plaintiff's assistance for a documentary project, exploiting his meticulous records and intellectual property without providing the promised compensation or credit.

93. Defendants' actions have caused Plaintiff irreparable harm, depriving him of rightful financial benefits, damaging his professional reputation, and leaving him in financial ruin.

### BACKGROUND OF RELATIONSHIP BETWEEN
### KIRK BURROWES AND JANICE SMALLS

94. Plaintiff Kirk Burrowes and Defendant Smalls seemingly shared a profoundly personal and familial relationship, built on trust, mutual support, and shared ambitions.



**Janice Smalls and Kirk Burrowes**

95. Plaintiff is the Godfather of Sean Combs' firstborn child, Justin Dior Combs, underscoring the deep bond and reliance between the families.



**Justin Dior Combs and Kirk Burrowes**

96. Plaintiff even attended Justin Combs christening at the historic Abyssinian Baptist Church, in Harlem New York, where the late great Pastor, Calvin Otis Butts, presided.



97. Plaintiff served as the backbone of BBE, acting as both a trusted business strategist and personal confidant to Defendant Smalls. He not only oversaw critical financial and operational affairs but also provided unwavering support, ensuring Smalls' stability and positioning her for financial and professional success. Plaintiff's commitment to Smalls was rooted in loyalty, trust, and shared ambitions.

98. In the summer of 1992, after Sean Combs' abrupt termination from Uptown Records by Andre Harrell, Combs spiraled into deep depression, plagued by self-doubt and suicidal ideation.

99. Recognizing the urgency of the situation, Plaintiff stepped in as Combs' stabilizing force, offering emotional fortitude, strategic business insight, and a clear vision for the future.

100. Plaintiff was the primary architect behind Combs' resurgence, crafting the blueprint that led to the birth of BBE without Plaintiff's intervention, Combs' career and the eventual empire of BBE would have ceased to exist.

101. Recognizing Plaintiff's indispensable contributions and leadership, Defendant Smalls and contractually obligated BBE to pay Plaintiff no less than 15% of the company's annual profits for every year he served as General Manager or President of the company.

102. Plaintiff relentlessly dedicated his time, industry expertise, and financial resources toward the development, rapid growth, and sustained success of BBE.

103. Despite being the cornerstone of the label's operations, Plaintiff was initially uncompensated for his invaluable services. By early 1993, he was finally added to payroll at a meager $30,000 per year, a fraction of what he rightfully deserved given his instrumental role in building the company's foundation.

104. On information and belief, the 15% share of BBE's annual profits that was contractually owed to Plaintiff between 1993 and 1997 far exceeded the salary he was paid. Plaintiff's rightful earnings amounted to millions of dollars, which were systematically withheld, depriving him of his fair share in the company's financial windfall.

105. In 1993, prominent business manager Bert Padell executed the issuance of 25 shares of BBE, formally allocating ownership stakes to Janice Smalls and Sean Combs.

106. Following Padell's issuance of the shares, Sean Combs and Janice Smalls formally transferred 25 shares to Plaintiff, honoring their agreement to grant him an equity stake in the company. A substitute share certificate for 25 shares was issued in Plaintiff's name, signifying his official and legally binding ownership in BBE.

107. Plaintiff's tireless efforts, strategic foresight, and unrelenting work ethic were the driving forces behind BBE's meteoric rise. Through his innovative branding, high-level negotiations, and tactical business structuring, Plaintiff orchestrated some of the label's most successful ventures and marketing campaigns, elevating BBE to industry dominance.

108. Despite his foundational role and long-standing personal bond with Defendant Smalls, Plaintiff was ruthlessly betrayed. Defendant Smalls, in a calculated move to consolidate power and financial control, executed a deliberate scheme to exclude Plaintiff from the company.

109. Smalls colluded with Kenneth Meiselas, Sean Combs and the other unknown defendants to strip Plaintiff of his ownership rights, disregarding his invaluable contributions, personal sacrifices, and the trust that had once defined their relationship.

110. The systematic exclusion of Plaintiff from the company's financial benefits and operational structure was not only a flagrant breach of contractual agreements but a deliberate act of financial and professional sabotage designed to erase his contributions while unjustly enriching the Defendants.

111. As a direct consequence of this betrayal, Plaintiff has suffered severe financial hardship, reputational damage, and emotional distress, while Sean Combs and Janice Smalls have continued to reap the financial rewards of Plaintiff's labor, ingenuity, and investments.

**1993 25% Shares of BBE to the 2019 BBE Documentary Manipulation**

112. In 1993, Plaintiff was formally granted 25 shares of BBE, constituting a 25% equity stake in the company. This ownership interest was a direct recognition of Plaintiff's foundational role in the creation, development, and success of BBE. However, despite this legally recognized stake, Sean Combs and Janice Smalls systematically deprived Plaintiff of his rightful ownership and earnings, misleading him with repeated false promises of compensation and equity restoration.

113. For more than two decades, from 1993 through 2019, Sean Combs and Janice Smalls engaged in a pattern of deception, assuring Plaintiff that he would receive his owed profits from BBE. Each time Plaintiff sought formal compensation or the return of his shares, he was met with deliberate stalling tactics and empty assurances.

114. In 2019, at Diana Ross's birthday celebration, Sean Combs and Janice Smalls once again acknowledged their fraudulent conduct, promising Plaintiff that they would "make things

right" regarding the wrongful theft of his 25% shares and the unpaid 15% share of BBE's annual profits. This moment was a rare verbal admission of liability, yet no corrective actions followed.

115.   During this conversation, Janice Smalls directly requested Plaintiff's assistance in developing a BBE documentary. In exchange, Smalls promised that Plaintiff would finally be compensated, reimbursed for his stolen 25% ownership, and paid the 15% earnings he was contractually owed. However, this was yet another manipulative tactic designed to exploit Plaintiff's industry knowledge and intellectual property without any intention of fulfilling their financial obligations.

116.   Upon information and belief, Defendant Smalls was acutely aware that Plaintiff possessed extensive records, notes, and journals documenting the entire history of BBE. These materials contained key financial details, operational records, and evidence of Plaintiff's rightful ownership—records that Sean Combs and Janice Smalls no longer had access to due to the passage of time. Recognizing the value of Plaintiff's documentation, Defendant Smalls sought to exploit his records for the documentary while continuing to deny his financial claims.

117.   To further deceive Plaintiff, Janice Smalls allegedly agreed to facilitate the transfer of funds upon receipt of Plaintiff's documentary treatment and industry insights. Believing these assurances to be genuine, Plaintiff delivered the documentary write-up in 2020 and provided Smalls with his banking information for the payment of his long-overdue contributions.

118.   Despite these assurances, no payments were ever made. Instead, Smalls continued to deny knowledge of Plaintiff's stolen 25% shares and unpaid 15% earnings, falsely claiming that she never benefited from the scheme, despite overwhelming evidence of her direct involvement in Plaintiff's fraudulent exclusion from BBE.

119.   This elaborate pattern of deceit, spanning over 25 years, was a deliberate effort to wear down Plaintiff, deprive him of financial resources, and obstruct his ability to legally challenge the theft of his equity stake. The documentary request in 2019 was merely the latest in a long series of manipulative tactics used to string Plaintiff along, extract his expertise, and continue profiting from his contributions while denying him rightful compensation.

120.   ***<u>As a direct result of this deception, Plaintiff was led to believe that restitution was imminent, delaying legal action and enabling Defendants to continue profiting from his stake in BBE</u>***.

121.   Plaintiff now seeks immediate restoration of his 25% equity stake, full repayment of his 15% profit share, and punitive damages for the decades of willful deception, fraudulent misrepresentation, and financial harm inflicted by Defendants[2].

## DISCOVERY OF FRAUD

122.   For several years, Plaintiff has endured immense financial hardship, leading to homelessness and prolonged periods of living in shelters across New York City. Deprived of his rightful 25% ownership stake in BBE and his 15% share of company profits, Plaintiff was deliberately forced into financial ruin as part of a coordinated effort to deprive him of legal recourse and investigative resources.

123.   Throughout this time, Plaintiff persistently sought accountability from Defendant Janice Smalls, who engaged in a deliberate campaign of deception. Smalls repeatedly and falsely assured Plaintiff that she had no involvement in or knowledge of the fraudulent transfer of his ownership shares. As recently as 2020, Smalls reaffirmed her false claims, shifting blame entirely onto Sean Combs and Kenneth Meiselas, while knowingly concealing her direct involvement and financial gain from the fraudulent transfer.

124.   Plaintiff was systematically misled and manipulated, left to believe that pursuing legal action against Smalls would be fruitless. The false assurances and continuous gaslighting tactics used by Smalls effectively obstructed Plaintiff's ability to challenge the fraudulent misappropriation of his equity stake, leaving him financially incapacitated and unable to access legal representation.

125.   In early 2024, Plaintiff unexpectedly reconnected with an estranged family member who, after hearing Plaintiff's account of events and financial struggles, urged him to seek legal intervention and pursue justice.

126.   Recognizing the egregious nature of the fraud perpetrated against Plaintiff, this family member swiftly intervened, securing legal counsel to investigate the fraudulent transfer of Plaintiff's ownership interest in BBE.

---

[2] Although Plaintiff was homeless at the time of making this agreement, in reliance on the assurances of Janice Smalls and Sean Combs, he used an old laptop, created the documentary write up, made several copies of the documentary write up, and mailed hard copies to Ms. Smalls. Plaintiff then text Ms. Smalls the banking information for a friend he trusts so she can begin remitting payment. Due to his homeless status, Plaintiff did not have a personal bank account.

127. During the course of this investigation, irrefutable evidence surfaced confirming that in or around 1998, Defendant Smalls had secretly received and unlawfully taken control of Plaintiff's 25% ownership stake in BBE.

128. This discovery directly refuted Defendant Smalls' decades-long denials and unmasked her as a central architect of the fraudulent scheme, alongside Sean Combs and Kenneth Meiselas. Contrary to her repeated assertions of innocence, Smalls had not only profited from the unlawful transfer but had actively conspired to suppress all knowledge of her receipt of Plaintiff's shares.

129. The newly uncovered documentation and financial records unequivocally proved that Smalls engaged in fraudulent concealment, preventing Plaintiff from discovering the true nature of the misappropriation and delaying his ability to pursue rightful legal claims.

130. This orchestrated concealment deprived Plaintiff of his legal rights, financial stability, and industry reputation, ensuring that Smalls and her co-conspirators could continue to reap the financial benefits of Plaintiff's hard-earned contributions while Plaintiff languished in destitution.

131. As a direct and immediate result of these findings, Plaintiff's fraud and breach of fiduciary duty claims became ripe for adjudication, leading to the initiation of legal proceedings against Smalls and her co-conspirators to recover his rightful ownership stake, financial damages, and punitive compensation for decades of willful deception and financial sabotage.

### FIRST CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
### (against Janice Smalls)

132. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133. As a business partner, trusted confidant, and fiduciary, Defendant Smalls owed Plaintiff a heightened duty of honesty, transparency, and fairness regarding their shared business interests in BBE. This duty arose from their longstanding professional and personal relationship, their daily interactions, and the trust Plaintiff placed in Smalls to act in good faith. Courts have consistently held that where a fiduciary relationship exists, a heightened duty of loyalty and full disclosure is required. (see *Meinhard v. Salmon*, 249 N.Y. 458 (1928) (Cardozo, J.) (holding that business partners owe the highest duty of loyalty to one another)).

21

134.    Throughout their partnership, Defendant Smalls and Plaintiff engaged in continuous and detailed discussions about BBE's operations, finances, and long-term strategies. These communications created a reasonable expectation of mutual candor, fiduciary loyalty, and transparency. (see *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989) (recognizing that fiduciary relationships require undivided loyalty and good faith disclosures)).

135.    Defendant Smalls intentionally weaponized Plaintiff's trust and unwavering support, methodically manipulating their relationship to facilitate her fraudulent actions while misrepresenting her role in the illicit misappropriation of Plaintiff's ownership stake in BBE. Courts have found that fraudulent concealment occurs when a party, in a fiduciary relationship, deliberately withholds material facts that the other party had a right to know. (see *Pope v. Saget*, 29 A.D.3d 437 (1st Dept. 2006) (holding that active concealment of material facts can give rise to a claim for fraud)).

136.    Smalls carefully maintained a facade of integrity, portraying herself as an innocent bystander while orchestrating Plaintiff's financial and professional downfall behind the scenes. (see *Pappas v. Tzolis*, 20 N.Y.3d 228 (2012) (finding that where a fiduciary engages in deception to the detriment of the other party, liability follows)).

137.    Using Plaintiff's trust as leverage, Defendant Smalls repeatedly misrepresented her role, claiming she had no knowledge of the coercion, fraud, and misappropriation orchestrated by Sean Combs and Kenneth Meiselas. Courts have ruled that fraud is actionable when a defendant knowingly makes false statements with intent to deceive the plaintiff, causing damages. (see *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

138.    In reality, Smalls played a direct and active role in the conspiracy, ensuring that Plaintiff remained unaware of her complicity and financial gain. (see *Matter of Greiff*, 92 N.Y.2d 341 (1998) (holding that concealment and misrepresentation by a fiduciary constitute actionable fraud)).

139.    In one of the most egregious acts of betrayal, Smalls knowingly and deliberately concealed her acceptance of Plaintiff's 25% ownership interest, maintaining the deception for decades.

140.    Through false assurances and calculated deceit, Defendant Smalls led Plaintiff to believe that she had no knowledge of the fraudulent transfer, effectively suppressing any opportunity for Plaintiff to reclaim his rightful stake in BBE. (see *Kaufman v. Cohen*, 307 A.D.2d 113 (1st

Dept. 2003) (holding that fraudulent concealment is established where a party intentionally prevents another from learning of a claim)).

141. These assurances were not mere omissions, but affirmative misrepresentations made with the intent to obstruct Plaintiff's legal rights.

142. For decades, Smalls actively concealed material facts about her receipt of Plaintiff's equity stake and the substantial financial benefits she derived from the fraudulent transfer. (see *Simcuski v. Saeli*, 44 N.Y.2d 442 (1978) (holding that fraudulent concealment tolls the statute of limitations if a defendant's deception prevents timely discovery of a claim)).

143. Plaintiff reasonably relied on Smalls' falsehoods, believing that she had not taken part in the scheme and that she had no financial interest in its outcome.

144. The truth was exposed in 2024 when legal counsel obtained definitive evidence proving that Smalls had unlawfully received and retained Plaintiff's 25% ownership interest in BBE as early as 1998.

145. This discovery unraveled decades of calculated deceit, exposing Smalls as a central figure in the fraudulent scheme that deprived Plaintiff of his wealth, business, and financial stability.

146. As a direct and foreseeable result of Defendant Smalls' fraudulent concealment, Plaintiff suffered extensive financial and emotional damages, including but not limited to:

1. The wrongful deprivation of his 25% ownership interest in BBE, valued in the millions.
2. The unlawful withholding of his 15% share in BBE's profits, amounting to substantial lost revenue.
3. Severe financial ruin, forcing Plaintiff into a state of homelessness and economic devastation.
4. Systematic reputational sabotage, as Plaintiff was blacklisted and stripped of his rightful position in the entertainment industry.
5. Profound emotional distress, psychological anguish, and prolonged hardship stemming from the financial and personal betrayal by a trusted business partner.

147. Defendant Smalls' actions were not only fraudulent but calculated, malicious, and executed with a blatant disregard for Plaintiff's rights.

148. The depth of Smalls' deception and the extent of Plaintiff's damages necessitate substantial compensatory and punitive damages to fully redress the harm inflicted and deter similar fraudulent conduct in the future.

<u>Tolling of the Statute Of Limitations</u>

149. The Complaint must explicitly state the legal and factual basis for tolling the statute of limitations to counter any defense raised by Defendants that the claims are time-barred.

<u>Fraudulent Concealment as a Basis for Tolling</u>

150.    Under New York law, the statute of limitations for fraud (CPLR § 213(8)) is six years from the date of the fraudulent act or two years from discovery. However, when a defendant engages in fraudulent concealment to prevent a plaintiff from discovering the fraud, the statute of limitations is tolled.

151.    Defendants engaged in a decades-long scheme of fraudulent concealment, intentionally misrepresenting and withholding material facts related to the fraudulent transfer of Plaintiff's 25% ownership interest and 15% profit share.

152.    Upon information and belief, Defendants continuously misrepresented Plaintiff's ownership status to third parties and withheld financial records, preventing Plaintiff from uncovering the fraud.

153.    Defendant Smalls, as recently as 2020, made affirmative misrepresentations to Plaintiff, falsely claiming she had no knowledge of or involvement in the wrongful transfer of Plaintiff's ownership interest.

<u>Recent Discovery of Fraud (2024)</u>

154.    Plaintiff was unable to discover the fraudulent scheme until 2024, when a legal investigation uncovered direct evidence proving that Defendant Smalls had, in fact, received Plaintiff's 25% shares as early as 1998.

155.    Defendant Smalls actively concealed her role by providing false assurances that she had no knowledge of the transfer and by failing to disclose relevant financial and corporate documents.

156.    Upon information and belief, Defendants engaged in additional deceptive acts beyond 2020, including omissions and material misstatements regarding Plaintiff's ownership rights and financial entitlements, thereby extending the period in which Plaintiff could reasonably bring these claims.

<u>Equitable Tolling Due to Plaintiff's Inability to Discover the Fraud</u>

157.    New York law recognizes that equitable tolling applies when a plaintiff, despite due diligence, was prevented from discovering the fraudulent conduct.

158.    Plaintiff, due to his financial distress, homelessness, and lack of resources, was unable to retain legal counsel or investigate the wrongful acts until 2024.

159.   Defendants' pattern of deception and concealment actively prevented Plaintiff from bringing his claims within the statutory period.

160.   Upon information and belief, Defendants took affirmative steps to suppress records, manipulate corporate filings, and obscure financial transactions, all of which delayed Plaintiff's ability to uncover the fraud.

### Continuing Wrong Doctrine

161.   Defendants' fraudulent conduct was not a single event but an ongoing scheme that continued beyond 1996 and well into 2020, warranting the application of the continuing wrong doctrine.

162.   Each year that Plaintiff was denied his rightful 15% share of profits and his 25% ownership stake, Defendants continued their wrongful conduct.

163.   Upon information and belief, Defendants knowingly withheld annual financial distributions, continued making misrepresentations, and engaged in further acts to suppress Plaintiff's rights, making the fraud an ongoing violation.

### Defendants' Bad Faith and Delay Tactics

164.   In 2019, at Diana Ross's VIP Event, Sean Combs, and Janice Smalls admitted wrongdoing, claiming they needed to 'make things right.' However, this was yet another delay tactic designed to prevent Plaintiff from taking legal action.

165.   Upon information and belief, Defendants deliberately misled Plaintiff with false assurances of eventual restitution, lulling him into inaction while they continued profiting from his stolen ownership interest.

### Precedent for Tolling Based on Fraudulent Concealment

166.   New York courts have held that fraudulent concealment tolls the statute of limitations when a defendant's deception prevents the plaintiff from discovering their claim. (See *Simcuski v. Saeli*, 44 N.Y.2d 442 (1978) (holding that a defendant's active concealment of wrongdoing justifies tolling)).

167.   Where a fiduciary relationship exists, a heightened duty of disclosure is imposed, and concealment by a fiduciary toll the limitations period. (See *Meinhard v. Salmon*, 249 N.Y. 458 (1928) (finding that fiduciaries owe the highest duty of loyalty and full disclosure)).

<u>Plaintiff Could Not Take Legal Action Sooner</u>
<u>Due to Defendant Smalls' Active Fraudulent Concealment</u>

168.    Defendant Janice Smalls cannot assert a laches or statute of limitations defense because she actively engaged in fraudulent concealment to prevent Plaintiff from discovering the wrongful deprivation of his 25% ownership interest in BBE ("BBE") and his 15% share of BBE's annual earnings. Under New York law, when a defendant intentionally conceals a cause of action, the statute of limitations is tolled until the plaintiff discovers—or reasonably should have discovered—the fraud. (See *Simcuski v. Saeli*, 44 N.Y.2d 442, 448 (1978)).

169.    For decades, Defendant Smalls deliberately misled Plaintiff by making false statements and omissions designed to obscure her role in the fraudulent misappropriation of his equity stake. The following actions illustrate how Plaintiff was prevented from discovering the fraud until 2024:

170.    Defendant Smalls affirmatively denied any involvement in the wrongful stock transfer – Each time Plaintiff questioned her about his missing 25% ownership stake, she lied, claiming she had no knowledge of the transfer and had never received his shares.

171.    Defendant Smalls repeatedly blamed others to deflect responsibility – She shifted blame to Sean Combs and Kenneth Meiselas, falsely portraying herself as a bystander rather than a direct beneficiary of the fraudulent transfer.

172.    Defendant Smalls exploited Plaintiff's trust to delay legal action – Plaintiff and Defendant Smalls shared a long-standing professional and personal relationship, with Plaintiff even serving as the Godfather to Sean Combs' firstborn child. Plaintiff reasonably relied on her statements and had no reason to believe she would intentionally deceive him for decades.

173.    In 2019, Defendant Smalls falsely assured Plaintiff that she and Sean Combs would "make things right" – At Diana Ross's VIP event, Defendant Smalls reaffirmed prior false assurances, misleading Plaintiff into believing that restitution was forthcoming. This was a deliberate strategy to prevent Plaintiff from pursuing legal action.

174.    As recently as 2020, Defendant Smalls engaged in further deception – She solicited Plaintiff's assistance in developing a BBE documentary, falsely promising him compensation. This further delayed legal action as Plaintiff reasonably believed he would be included in the project and financially compensated.

175. It was only in 2024, when newly uncovered documents and legal investigation revealed that Defendant Smalls had secretly received and retained Plaintiff's 25% ownership interest as early as 1998, that Plaintiff was able to fully discover the extent of the fraud.

<u>Defendant Smalls Actively Concealed the<br>Fraud to Obstruct Plaintiff's Claims</u>

176. The doctrine of fraudulent concealment applies where a defendant takes active steps to prevent a plaintiff from discovering their claim. (See *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dept. 2003)). Defendant Smalls engaged in multiple acts of concealment, including:

177. <u>Withholding corporate records</u> – Defendant Smalls deliberately concealed stock transfer documents and financial records, making it impossible for Plaintiff to confirm that his ownership interest had been fraudulently transferred to her.

178. <u>Providing false assurances to lull Plaintiff into inaction</u> – By falsely claiming that she had no role in the misappropriation, she ensured that Plaintiff did not pursue legal action for decades.

179. <u>Suppressing financial disclosures</u> – Defendant Smalls knowingly withheld profit-sharing reports and other documents that would have revealed that Plaintiff's 15% profit stake was being wrongfully withheld.

180. <u>Leveraging Plaintiff's trust and economic disadvantage</u> – Defendant Smalls knew that Plaintiff, after being blacklisted from the industry, lacked the financial resources to investigate or litigate the matter earlier. Courts recognize that where a defendant's fraudulent conduct places a plaintiff in a disadvantaged position, tolling is warranted. (See *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

181. These actions amount to fraudulent concealment, and as a result, the statute of limitations was tolled until 2024, when Plaintiff finally obtained definitive evidence of Defendant Smalls' fraudulent acts.

<u>The Continuing Wrong Doctrine Applies</u>

182. Even if the fraudulent misappropriation began in 1996, Defendant Smalls' ongoing misconduct means that Plaintiff's claims remain timely under the continuing wrong doctrine. (See *Selkirk v. State*, 249 A.D.2d 818, 819 (3d Dept. 1998)). The fraud was not a one-time event—it was an ongoing scheme that continued year after year, including:

    1. Each year that Defendant Smalls failed to pay Plaintiff his 15% profit share, she engaged in a new wrongful act, keeping the claim timely.

2. Each time she misrepresented her role in the fraudulent transfer, she renewed the deception, further delaying Plaintiff's ability to uncover the truth.
3. Each financial benefit Defendant Smalls received from Plaintiff's ownership stake constitutes a new instance of unjust enrichment, extending the claim's viability.

183. The continuing wrong doctrine applies when a defendant engages in a continuous course of fraudulent or wrongful conduct. Here, Defendant Smalls benefited from Plaintiff's misappropriated stake every year, making the fraud an ongoing harm rather than a single past event.

184. Defendant Smalls' failure to disclose material facts, combined with her role as Plaintiff's business partner, further justifies tolling.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for the loss of his 25% ownership interest in BBE, lost profits, and other financial harms;
B. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day.  Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;
C. For punitive damages in an amount to be determined at trial, sufficient to punish Defendant Smalls for her malicious and intentional conduct and to deter such wrongful acts in the future;
D. For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law;
E. For an equitable accounting of all profits, assets, and benefits derived by Defendant Smalls from the fraudulent concealment and wrongful transfer of Plaintiff's ownership interest;
F. For an award of costs, reasonable attorneys' fees, and other expenses incurred in bringing this action;
G. For the imposition of a constructive trust over any assets or profits obtained by Defendant Smalls as a result of her fraudulent conduct; and
H. For such other and further relief as the Court deems just, equitable, and proper.

### SECOND CAUSE OF ACTION
### FRAUD
### (against Janice Smalls)

185. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

186. Defendant Janice Smalls willfully and knowingly engaged in an orchestrated campaign of deception, consistently making false representations and deliberately omitting material facts regarding her direct involvement in and substantial financial gain from the fraudulent scheme that resulted in Plaintiff's forced relinquishment of his 25% ownership interest in BBE

187. Plaintiff's claims are timely under CPLR § 213(8), which provides for fraud claims to be filed within two years of discovery. Defendant Smalls systematically concealed critical

evidence and engaged in deliberate misrepresentation, ensuring that Plaintiff remained unaware of the fraudulent transfer of his 25% ownership stake until legal counsel uncovered irrefutable proof in 2024. Defendant Smalls' deceptive tactics and ongoing suppression of material facts ensured that prior lawsuits did not directly implicate her, as she had meticulously hidden her involvement for over two decades.

188.    Defendant Smalls misrepresented her knowledge and direct participation in the coercion orchestrated by Sean Combs and Kenneth Meiselas, despite being an active conspirator who directly benefited from the fraudulent scheme.

189.    Defendant Smalls repeatedly and intentionally engaged in fraudulent misrepresentation and material omissions, including but not limited to:

1. Falsely asserting that she had no knowledge of or involvement in the scheme that led to Plaintiff being forcibly stripped of his 25% ownership stake in BBE;
2. Publicly and privately portraying herself as a neutral party while actively facilitating and profiting from the fraudulent transfer of Plaintiff's shares to herself;
3. Knowingly concealing her continued financial enrichment and corporate control over the assets derived from Plaintiff's rightful ownership interest.

190.    Defendant Smalls deliberately engaged in this fraudulent scheme to mislead Plaintiff, lull him into inaction, and prevent him from initiating legal recourse that could have exposed her role in the misappropriation of his ownership stake.

191.    At all relevant times, Defendant Smalls was fully aware that her representations were false. She knowingly withheld material information, destroyed or concealed records that would have exposed her involvement, and intentionally misled Plaintiff and third parties to maintain control over the stolen equity.

192.    Plaintiff's fraud claims are timely under New York law, as Defendant Smalls intentionally misrepresented her role in the fraudulent transfer and actively suppressed material evidence, including her receipt and retention of Plaintiff's 25% ownership stake, preventing him from discovering the truth until 2024.

193.    Plaintiff's discovery of the fraud in 2024, within the two-year statutory window, was the direct result of legal counsel uncovering documentary evidence that proved Defendant Smalls' integral role in the coerced and unlawful transfer of his shares. Prior to this discovery, Smalls' extensive and deliberate cover-up precluded Plaintiff from challenging the fraud or seeking redress through the courts.

194.   Plaintiff justifiably relied on Defendant Smalls' false representations and omissions based on their longstanding personal and professional relationship, the trust he placed in her as a business partner, and her repeated assertions that she had no involvement in the fraudulent scheme.

195.   Plaintiff's reliance was reasonable and justified, as evidenced by:

1. The extensive professional and personal trust Plaintiff placed in Defendant Smalls, believing she was an ally rather than a co-conspirator;
2. Defendant Smalls' persistent and calculated reassurances that she was uninvolved in the fraudulent stock transfer, despite benefiting from it;
3. The absence of immediate access to documentation or internal records implicating Defendant Smalls, which she had actively concealed and suppressed.

196.   Plaintiff's reliance on Defendant Smalls' intentional fraud and deception resulted in catastrophic and irreparable harm, including but not limited to:

1. The unlawful deprivation of his 25% ownership interest in BBE, valued at tens of millions of dollars based on the label's continued success and extensive revenue generation;
2. The loss of his 15% contractual equity stake in the gross earnings and cumulative profits of BBE from its inception to the present, leading to immeasurable financial damages;
3. Severe economic hardship, including lost profits, unpaid earnings, and the obliteration of wealth-building opportunities that were rightfully his;
4. Professional ruin and irreparable reputational harm, as Defendant Smalls' fraudulent actions contributed to Plaintiff's exclusion from lucrative business opportunities within the entertainment industry;
5. Extreme financial distress that led to homelessness and an inability to establish financial stability after being defrauded of his ownership interest;
6. Profound emotional and psychological trauma resulting from the calculated betrayal by Defendant Smalls, whose actions decimated Plaintiff's career, financial well-being, and professional legacy.

197.   Defendant Smalls' fraudulent conduct was intentional, egregious, and calculated to strip Plaintiff of his wealth, position, and financial security. Courts have consistently held that fraudulently depriving a business partner of an agreed-upon equity interest constitutes actionable fraud. See *Veritas Capital Mgmt., L.L.C. v. Campbell*, 82 A.D.3d 529 (1st Dep't 2011) (holding that concealment of a financial interest and fraudulent misrepresentations related to business ownership are actionable under New York law).

198.   As recognized in *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003), fraudulent misrepresentations and omissions that induce detrimental reliance create a direct cause of

action for fraud. Defendant Smalls' repeated misrepresentations directly influenced Plaintiff's inability to take legal action until 2024, satisfying the elements of fraudulent concealment.

199.    As a direct and proximate result of Defendant Smalls' fraudulent misrepresentations, concealment, and deliberate malfeasance, Plaintiff has suffered extensive damages in an amount to be determined at trial. Plaintiff seeks full restitution, compensatory damages for lost earnings, and punitive damages to deter similar fraudulent conduct in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for the loss of his 25% ownership interest in BBE, including its appraised value, lost profits, and any additional financial harms directly caused by Defendant Smalls' fraudulent actions;

B. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day. Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;

C. For punitive damages in an amount to be determined at trial, sufficient to punish Defendant Smalls for her deliberate and malicious conduct, and to deter others from engaging in similar fraudulent schemes;

D. For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law, to ensure Plaintiff is fully restored for the financial and temporal losses he has endured;

E. For an equitable accounting of all profits, assets, and financial benefits Defendant Smalls derived from the fraudulent transfer of Plaintiff's ownership interest and related business activities;

F. For an award of reasonable attorneys' fees, costs, and other expenses incurred in prosecuting this action, as authorized by law or equity;

G. For the imposition of a constructive trust over all assets, profits, or property unjustly retained by Defendant Smalls as a result of her fraudulent conduct, to prevent further unjust enrichment;

H. For declaratory relief affirming Defendant Smalls' liability for fraudulent actions, to establish a clear legal precedent against such behavior;

I. For any other equitable relief deemed necessary by the Court to restore Plaintiff's rightful position and deter future fraudulent conduct; and

J. For such other and further relief as the Court deems just, equitable, and proper.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
**(against Janice Smalls)**

200.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

201.    Defendant Janice Smalls knowingly, willfully, and maliciously enriched herself at Plaintiff's expense, orchestrating and benefiting from the fraudulent transfer of Plaintiff's rightful 25% ownership interest in BBE. Despite Plaintiff's instrumental role in the Label's

success, Defendant Smalls intentionally deprived him of his contractual share of 15% of the Label's gross earnings and profits, further compounding the financial injustice.

202.  Plaintiff was a foundational force in the creation, development, and sustained success of BBE. His expert management, strategic foresight, and significant financial investments were the cornerstones of the Label's meteoric rise to prominence within the music industry.

203.  Plaintiff's indispensable contributions to BBE encompassed:

1.  Recruiting, mentoring, and managing world-renowned artists, ensuring talent acquisition aligned with the Label's creative and commercial objectives;
2.  Negotiating pivotal contracts with record companies, distributors, and corporate sponsors, securing lucrative partnerships that fueled the Label's expansion;
3.  Overseeing production schedules, release strategies, and promotional campaigns to optimize market penetration and maximize profit generation;
4.  Personally investing approximately $100,000 to finance critical operational expenses, sustaining the Label's infrastructure and allowing it to thrive during its formative years.

204.  Defendant Smalls knowingly capitalized on Plaintiff's labor, financial backing, and executive expertise, deliberately devising a scheme to exclude Plaintiff from ownership and financial benefits while simultaneously reaping the economic rewards of his foundational efforts.

205.  Defendant Smalls fraudulently retained Plaintiff's rightful equity stake in BBE, exploiting his work, reputation, and industry influence to fortify her control and amass significant wealth—all without compensating or acknowledging Plaintiff's contributions.

206.  The retention of these substantial benefits by Defendant Smalls was both inequitable and unconscionable, as it came directly at Plaintiff's financial and professional expense, depriving him of millions of dollars in rightful earnings and industry opportunities.

207.  The coordinated exploitation of Plaintiff by Smalls and Sean Combs resulted in substantial personal financial enrichment for both, as they continued to generate enormous profits from BBE's success—success that was largely built upon Plaintiff's intellectual, managerial, and financial investments.

208.  Allowing Defendant Smalls to retain these ill-gotten gains without compensating Plaintiff for the value of his equity, labor, and strategic contributions would be a gross violation of equity and good conscience.

209.  As a direct and foreseeable result of Defendant Smalls' deliberate acts of unjust enrichment, fraudulent retention of assets, and exclusion of Plaintiff from his contractual entitlements, Plaintiff has suffered significant damages, including:

1. The wrongful deprivation of his 25% ownership interest and 15% profit stake in BBE, conservatively valued in the tens of millions of dollars based on the Label's profitability and enduring market dominance;

2. Severe financial losses stemming from lost profits, dividends, and the inability to monetize his equity stake, preventing Plaintiff from reinvesting in other business ventures;

3. Irreparable reputational harm, which has directly impeded Plaintiff's ability to secure business opportunities in the music and entertainment industries, further depriving him of financial stability;

210. Profound emotional and psychological distress inflicted by Defendant Smalls' betrayal, calculated deception, and prolonged exploitation of Plaintiff's trust and labor.

211. Defendant Smalls' conduct constitutes unjust enrichment under established legal principles, necessitating:

1. Full restitution and disgorgement of all ill-gotten financial benefits derived from Plaintiff's equity stake and contributions;

2. Immediate compensation for Plaintiff's share of BBE's earnings, plus pre- and post-judgment interest;

3. Equitable relief in the form of a constructive trust over all assets and profits wrongfully retained by Defendant Smalls;

212. Punitive damages to deter further fraudulent conduct and punish Defendant Smalls for her flagrant and willful misconduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For restitution in an amount sufficient to restore Plaintiff's 25% ownership interest in BBE, including its appraised value, associated profits, and any accrued interest, to fully compensate for the wrongful deprivation;

B. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day. Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;

C. For compensatory damages in an amount reflecting the total value of Plaintiff's labor, investments, lost profits, and the market value of his equity interest, to be determined at trial;

D. For the imposition of a constructive trust over all assets, revenues, profits, and other property unjustly retained by Defendant Smalls as a direct result of her wrongful conduct, ensuring equitable restoration to Plaintiff;

E. For a full and equitable accounting of all profits, revenues, and benefits derived by Defendant Smalls from Plaintiff's contributions, ownership interest, and the continued operation of BBE;

F. For pre-judgment and post-judgment interest on all monetary damages awarded, as allowed by law, to ensure full compensation for Plaintiff's financial harm;

G. For an award of all costs, reasonable attorneys' fees, and litigation expenses incurred in bringing and prosecuting this action, to the extent permitted by law or equity;

H. For declaratory relief affirming Defendant Smalls' liability for unjust enrichment and establishing Plaintiff's rightful claims to compensation and restoration;

I. For injunctive relief, if necessary, to prevent further unjust enrichment or harm to Plaintiff's rights and interests; and

J. For such other and further relief as the Court deems just, equitable, and proper to achieve full justice and accountability.

## FOURTH CAUSE OF ACTION
### DECEPTIVE BUSINESS PRACTICES – NY GBL § 349
### (against Janice Smalls and the Doe Defendants)

213. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

214. Defendant Janice Smalls deliberately and knowingly engaged in deceptive business practices in connection with BBE, orchestrating a pattern of misrepresentations, omissions, and financial concealment that directly harmed Plaintiff. Courts have held that "fraudulent misrepresentations made in the course of business dealings are actionable under New York law" (*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

215. Defendant Smalls' misconduct was not confined to a private dispute with Plaintiff—her deceptive acts extended to the broader business and entertainment marketplace, misleading investors, artists, and business partners into believing that she operated with transparency, integrity, and legitimacy. Courts have long recognized that "misrepresentations that create a false impression of business credibility and trustworthiness can constitute fraudulent inducement" (*Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dept. 2003)).

216. Defendant Smalls intentionally fabricated a false narrative regarding her role and knowledge of the fraudulent transfer of Plaintiff's 25% equity stake and 15% share of profits in BBE. She actively concealed her direct financial gains from the scheme while maintaining the appearance of legitimacy to industry professionals, business associates, and the public.

217. Defendant Smalls engaged in a deliberate and systemic pattern of materially deceptive conduct, which included but was not limited to:

1. Falsely asserting that she had no knowledge of or involvement in the fraudulent transfer of Plaintiff's ownership interest, while simultaneously reaping substantial financial benefits from the unlawful transaction;

2. Concealing financial records, profit distributions, and revenue streams, preventing Plaintiff from accessing critical information regarding the financial health and earnings of BBE;

3. Misleading Plaintiff into believing she was a trusted business partner, while actively conspiring to undermine his ownership rights, credibility, and professional standing in the entertainment industry.

218.    Courts have held that fraudulent concealment is actionable where a party "had a duty to disclose and instead made affirmative misrepresentations to suppress material facts" (*P.T. Bank Cent. Asia, N.Y. Branch v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 378 (1st Dept. 2003)). Defendant Smalls' failure to disclose her fraudulent actions and the profits she derived from them constitutes a clear violation.

219.    Defendant Smalls manipulated Plaintiff's trust and professional relationship to advance her fraudulent objectives. She exploited their prior business dealings and her position of influence to maintain Plaintiff's belief that she was uninvolved in any fraudulent dealings, effectively preventing him from taking timely legal action.

220.    Defendant Smalls' conduct constitutes a clear violation of New York General Business Law § 349, which explicitly prohibits deceptive business practices and misleading statements in commercial dealings. Her systematic misrepresentations and omissions were designed to deceive a reasonable person, including Plaintiff, and directly caused him substantial injury. Courts have consistently recognized that "a plaintiff must demonstrate that the defendant's deceptive conduct was consumer-oriented and resulted in actual harm" (*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

221.    Defendant Smalls knowingly misrepresented the legitimacy of Plaintiff's ownership interest, employing coercion, deception, and fraudulent business practices to exploit Plaintiff's foundational contributions to BBE for her own financial gain.

222.    As a direct and proximate result of Defendant Smalls' fraudulent business practices, Plaintiff suffered severe and irreparable harm, including:

1.  The permanent and unlawful deprivation of his 25% ownership stake in BBE, which is valued in the millions of dollars;
2.  Significant financial damages, including the loss of 15% of the company's annual profits, making it impossible for Plaintiff to monetize his rightful equity stake;
3.  Substantial reputational harm, which has limited Plaintiff's ability to secure future professional and business opportunities in the music and entertainment industries due to industry blacklisting and defamatory narratives propagated by Defendant Smalls;
4.  Profound emotional and psychological distress, caused by Defendant Smalls' calculated betrayal, manipulation, and exploitation of Plaintiff's trust and business acumen.

223.    Defendant Smalls willfully and intentionally engaged in these deceptive business practices, fully aware of the financial, professional, and emotional devastation her fraudulent actions would cause Plaintiff. Courts have held that "where fraud is intentional and calculated to

maximize damage, punitive damages may be warranted" (*Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961)).

224.    The egregious nature of Defendant Smalls' fraudulent conduct warrants substantial relief, including compensatory, treble, and punitive damages, as well as equitable relief to restore Plaintiff's wrongfully deprived business and financial interests. Courts have affirmed that "treble damages are appropriate in cases involving deliberate and egregious fraudulent schemes" (*City of New York v. Smokes-Spirits.com, Inc.,* 12 N.Y.3d 616, 623 (2009)).

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for the financial losses, reputational harm, and emotional distress caused by Defendant Smalls' deceptive business practices, including the value of Plaintiff's lost 25% ownership interest in BBE;

B. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day.  Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;

C. For treble damages pursuant to New York General Business Law § 349(h) to deter such wrongful conduct and ensure full accountability;

D. For an order enjoining Defendant Smalls from engaging in further deceptive business practices, including any misrepresentation or exploitation of Plaintiff's contributions and equity interests;

E. For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law;

F. For an award of all costs, reasonable attorneys' fees, and litigation expenses incurred in prosecuting this action, as allowed under New York General Business Law § 349(h);

G. For declaratory relief affirming Defendant Smalls' liability for deceptive business practices, including findings of fact to establish Plaintiff's rightful claims to compensation and restitution;

H. For punitive damages to further punish Defendant Smalls for her egregious and intentional conduct and to deter similar acts in the future; and

I. For such other and further relief as the Court deems just, equitable, and proper to fully restore Plaintiff and achieve justice.

## FIFTH CAUSE OF ACTION
### CONVERSION
### (against Janice Smalls and the Doe Defendants)

225.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

226.    Plaintiff held a clear, legally enforceable, and vested 25% ownership interest in BBE, an equity stake that was earned through his foundational contributions, including his substantial financial investments, operational oversight, and strategic leadership. Plaintiff's expertise,

industry relationships, and executive management skills were integral to the formation, development, and expansion of the Label.

227. Plaintiff's equity stake conferred exclusive rights, including decision-making authority, financial participation, and access to profit distributions. Plaintiff had a contractual and legally protected interest in all revenues generated by BBE.

228. Defendant Janice Smalls, acting in concert with Kenneth Meiselas, Sean Combs, and other known and unknown co-conspirators, engaged in a deliberate and unlawful campaign to usurp Plaintiff's 25% ownership interest. Through fraud, coercion, intimidation, and the abuse of fiduciary duties, Defendants wrongfully seized, retained, and monetized Plaintiff's stake without consent or legal justification.

229. Defendant Smalls knowingly and intentionally orchestrated Plaintiff's dispossession, employing misrepresentation, deceit, and undue influence to permanently exclude him from his equity stake and associated financial benefits. Her actions constituted a calculated breach of fiduciary duty and a deliberate effort to defraud Plaintiff of his legally protected property rights.

230. Defendant Smalls profited immensely from her fraudulent and unlawful control over Plaintiff's ownership interest, leveraging the stolen equity to consolidate power, reap substantial financial rewards, and elevate her professional and social standing within the industry.

231. Defendant Smalls unjustly enriched herself through the conversion of Plaintiff's ownership interest, benefiting from the Label's financial success, profit distributions, and lucrative business deals that were directly tied to Plaintiff's early investments and managerial contributions.

232. Plaintiff repeatedly and formally demanded restitution, seeking the return of his ownership interest, financial compensation, and an accounting of all profits wrongfully withheld. Despite these legitimate and legally justified demands, Defendant Smalls refused to restore Plaintiff's rightful stake or provide any form of compensation, demonstrating an egregious pattern of obstruction and continued exploitation.

233. Defendant Smalls' unlawful acts of conversion were intentional, malicious, and in direct violation of Plaintiff's fundamental property rights. Her persistent refusal to acknowledge

Plaintiff's legal claim, combined with her efforts to conceal financial records and business dealings, constitutes an aggravated form of fraud and corporate misconduct.

234.    Defendant Smalls' fraudulent scheme involved multiple overt acts of conversion, including but not limited to:

1. Collaborating with Sean Combs, Kenneth Meiselas, and other conspirators to forcibly coerce Plaintiff into relinquishing his ownership interest through threats and deceit.
2. Suppressing financial disclosures and corporate records to prevent Plaintiff from accessing information about the true financial status and revenue streams of BBE.
3. Retaining full control over assets, financial accounts, and profit distributions, despite knowing that Plaintiff had a legally enforceable ownership claim.

235.    As a direct and proximate result of Defendant Smalls' fraudulent conversion, Plaintiff has suffered severe and ongoing harm, including but not limited to:

1. The permanent deprivation of his 25% ownership stake and his 15% share in BBE's profits, which, based on the Label's historical profitability and market valuation, amounts to tens of millions of dollars in lost revenue.
2. Significant financial losses from denied profit distributions, unpaid dividends, and the inability to monetize his rightful equity stake.
3. Permanent reputational damage, resulting in the loss of career opportunities, industry relationships, and professional credibility in the music and entertainment sectors.
4. Extreme emotional and psychological distress, stemming from Defendant Smalls' deliberate betrayal, fraudulent misappropriation, and ongoing obstruction of justice.

236.    Defendant Smalls' unlawful conduct was not only willful and malicious but also demonstrated a reckless and wanton disregard for Plaintiff's legal rights. Her actions warrant the imposition of substantial compensatory, restitutionary, and punitive damages to fully redress the harm suffered by Plaintiff and to serve as a deterrent against similar fraudulent schemes in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for the value of his 25% ownership interest in BBE, including its appraised value, lost profits, and associated financial harms;
B. For restitutionary damages or, alternatively, the return of Plaintiff's 25% ownership interest in BBE;
C. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day. Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;
D. For punitive damages in an amount to be determined at trial, sufficient to punish Defendant Smalls for her intentional and malicious conduct and to deter similar wrongful acts in the future;

E.  For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law;

F.  For the imposition of a constructive trust over all assets, profits, and property derived from Plaintiff's ownership interest and contributions;

G.  For an injunction preventing Defendant Smalls from further profiting from or disposing of Plaintiff's converted property;

H.  For an equitable accounting of all profits, assets, and financial benefits derived from Plaintiff's ownership interest and contributions, to ensure full restitution;

I.  For costs, reasonable attorneys' fees, and other expenses incurred in prosecuting this action; and

J.  For such other and further relief as the Court deems just, equitable, and proper.

### SIXTH CAUSE OF ACTION
### Civil Conspiracy
### (All Defendants)

237. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

238. Defendants knowingly and intentionally conspired to commit fraud (New York Penal Law § 190.65), conversion, and breach of fiduciary duty, devising a sophisticated scheme to deprive Plaintiff of his 25% ownership stake in BBE and to exploit his financial investments, managerial expertise, and intellectual contributions for their own illicit gain.

Roles and Actions of Defendants and Co-Conspirators

239. Defendant Janice Smalls: Played an active and central role as a direct beneficiary of Plaintiff's ownership interest. She deliberately concealed her involvement for decades, repeatedly lying to Plaintiff about the fraudulent transfer of his shares. As recently as 2020, Defendant Smalls continued to deny her receipt of Plaintiff's shares while secretly profiting from their misappropriation and working alongside other Defendants to solidify their unlawful control over BBE.

240. Lawyer Doe 1: As legal counsel to BBE, Sean Combs, and Janice Smalls, Lawyer Doe 1 used his legal position to draft and execute fraudulent documentation, misrepresent ownership structures, and orchestrate the coercive transfer of Plaintiff's shares, in violation of New York Judiciary Law § 487, which prohibits attorneys from engaging in fraudulent or deceitful conduct to deceive the courts or harm a client.

241. James Doe 1: Employed violent intimidation tactics to force Plaintiff into compliance. In May 1996, James Doe 1 threatened Plaintiff with physical harm to coerce him into signing documents that fraudulently relinquished his 25% ownership interest in BBE. James Doe 1 also collaborated with Smalls and Lawyer Doe 1 to ensure Plaintiff was

39

permanently excluded from financial and operational decision-making within the company, in violation of New York Penal Law § 135.60 (Coercion in the Second Degree).

242.    James Doe 1 acted as the architect of the conspiracy, directing the coercion, fraudulent paperwork, and financial misrepresentation. His role included personally intimidating Plaintiff, partnering with legal counsel to execute the fraudulent stock transfer, and using his industry influence to silence Plaintiff while ensuring that the unlawful scheme remained hidden, amounting to tortious interference with contract under New York common law.

243.    The conspiracy involved a highly coordinated effort among Defendant Smalls, James Doe 1, Lawyer Doe 1, and other co-conspirators to:

1. Use threats, deceit, and undue influence to strip Plaintiff of his rightful ownership interest.
2. Consolidate Plaintiff's 25% stake with Smalls' 75% shares, granting her complete and illicit control over BBE.
3. Falsify corporate records, financial disclosures, and stock documentation to conceal the fraudulent transfer from regulators and Plaintiff, in direct violation of New York Business Corporation Law § 720, which provides for legal action against officers who engage in fraudulent activities.

244.    Defendant Smalls was a key conspirator, actively engaging in the fraudulent scheme to ensure she gained total control of BBE. She intentionally misrepresented her role, hid material information from Plaintiff, and used delays and deceptive tactics to prevent Plaintiff from timely asserting his legal claims, in violation of New York General Business Law § 349 (Deceptive Acts and Practices).

245.    Lawyer Doe 1 knowingly and deliberately violated ethical and legal duties by providing fraudulent legal services that facilitated the misappropriation of Plaintiff's ownership interest. His misconduct included:

1. Knowingly drafting fraudulent documents that misrepresented ownership transfers.
2. Providing legal cover for coercive transactions conducted under duress.
3. Concealing Plaintiff's rightful stake from corporate filings and regulatory bodies.

246.    Lawyer Doe 1, as an attorney, likely violated several ethical duties under the New York Rules of Professional Conduct and the California Rules of Professional Conduct.  Attorneys are bound by strict professional and ethical obligations, and the complaint's allegations (e.g., coercion, preparation of fraudulent documents, misrepresentation) suggest potential breaches of these duties.  Violations of Ethical Duties:

1. Duty of Loyalty and Avoidance of Conflicts of Interest

1. New York Rule 1.7 / California Rule 1.7: An attorney must avoid representing conflicting interests unless informed consent is obtained. Lawyer Doe 1 allegedly prioritized the interests of James Doe 1 and Janice Smalls over Plaintiff's interests, despite his fiduciary obligations as legal counsel to BBE, of which Plaintiff was a 25% owner.

2. New York Rule 1.9 / California Rule 1.9: An attorney owes a duty of loyalty to former clients and must not act against their interests. Lawyer Doe 1 previously represented Plaintiff as a stakeholder in BBE, assisting other parties to defraud Plaintiff violated this rule.

2. Prohibition on Fraudulent Conduct

1. New York Rule 8.4(c) / California Rule 8.4(c): Attorneys must not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Lawyer Doe 1 is accused of preparing fraudulent documents and concealing material information about the ownership structure of BBE.

2. New York Rule 1.2(d) / California Rule 1.2.1: Lawyers must not counsel or assist a client in conduct they know to be fraudulent or criminal.  Here, Lawyer Doe 1 knowingly facilitated the coercion and fraudulent transfer of Plaintiff's shares to James Doe 1 and Janice Smalls.  In doing so he breached this rule.

3. Duty of Competence

1. New York Rule 1.1 / California Rule 1.1: Attorneys must provide competent representation. Facilitating the preparation of fraudulent documentation and failing to act in the best interests of all stakeholders of BBE constitute incompetence.

4. Duty to Avoid Improper Influence and Coercion

1. New York Rule 8.4(d) / California Rule 8.4(d): Attorneys must not engage in conduct prejudicial to the administration of justice. Allegations that Lawyer Doe 1 was present during coercion with threats of physical violence suggest participation in behavior contrary to the rule of law.

247. The objectives of the conspiracy were to:

1. Fraudulently transfer Plaintiff's 25% ownership interest in BBE to Defendant Smalls and other co-conspirators without providing lawful consideration;

2. Exploit Plaintiff's contributions to the Label's success, including his financial investments, managerial expertise, and professional reputation, for their personal enrichment; and

3. Consolidate control and profits from BBE for the exclusive benefit of the conspirators, while excluding Plaintiff from any future financial or operational involvement.

248. Defendants engaged in numerous overt acts in furtherance of the conspiracy, including but not limited to:

1. Coercing Plaintiff in 1996 through threats of physical harm to relinquish his 25% ownership interest;

2. Fraudulently transferring Plaintiff's shares to Defendant Smalls without providing consideration;

3. Preparing and executing false documentation to conceal the true nature of the transfer;

    4. Repeatedly denying Plaintiff's ownership rights and misrepresenting the financial and operational structure of BBE;

    5. Actively concealing profits, revenues, and benefits derived from Plaintiff's contributions and equity interest.

<u>Shared Intent to Harm Plaintiff</u>

249. Defendants knowingly participated in the conspiracy with the shared intent to harm Plaintiff, deprive him of his rightful ownership interest, and unjustly enrich themselves at his expense.

250. Defendants knowingly participated in the conspiracy with the shared objective of:

    1. Depriving Plaintiff of his rightful ownership interest and financial benefits in BBE;

    2. Exploiting Plaintiff's contributions to enhance their financial and professional standing;

    3. Consolidating control and profits from BBE at Plaintiff's expense.

251. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered significant harm, including:

    1. The wrongful deprivation of his 25% ownership interest in BBE, valued at millions of dollars;

    2. Substantial financial losses, including lost profits and revenues that Plaintiff would have earned from his ownership stake;

    3. Reputational harm, which diminished Plaintiff's professional credibility and limited his ability to secure future business opportunities; and

    4. Emotional and psychological distress caused by Defendants' betrayal, coercion, and exploitation.

252. Defendants' actions were willful, malicious, and demonstrated a reckless disregard for Plaintiff's rights, warranting the imposition of compensatory, punitive, and equitable relief to address the harm caused and deter similar conduct in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

    A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for the financial losses, reputational harm, and emotional distress caused by the conspiracy, including the value of Plaintiff's lost 25% ownership interest in BBE;

    B. Additionally, Plaintiff was an independent audit of BBE's earnings from inception to present day. Compensate Plaintiff his 15% interest share of the yearly profits compounded over time by 9% interest;

    C. For punitive damages in an amount sufficient to punish Defendants for their intentional and malicious conduct and deter others from engaging in similar wrongful acts;

    D. For an order declaring Defendants jointly and severally liable for the harm caused by their conspiracy;

    E. For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law;

    F. For the imposition of a constructive trust over all assets, profits, and property derived from Plaintiff's ownership interest and contributions;

G. For injunctive relief preventing Defendants from further exploiting Plaintiff's contributions or engaging in similar unlawful conduct;

H. For an equitable accounting of all profits, revenues, and financial benefits derived from Plaintiff's ownership interest and contributions;

I. For reasonable attorneys' fees, costs, and other litigation expenses incurred in prosecuting this action; and

J. For such other and further relief as the Court deems just, equitable, and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants Janice Smalls, Lawyer Doe 1, James Doe 1, and other co-conspirators as follows:

A. For compensatory damages in an amount sufficient to fully compensate Plaintiff for all financial losses, including but not limited to the value of Plaintiff's 25% ownership interest, as well as his 15% stake in the gross earnings and profits of BBE from inception to present day, its appraised market value, lost profits, and the harm caused to Plaintiff's professional reputation and opportunities;

B. For punitive damages in an amount to be determined at trial, sufficient to punish Defendants for their intentional, malicious, and egregious conduct and to deter others from engaging in similar wrongful acts in the future;

C. For an order declaring Defendants jointly and severally liable for the harm caused by their wrongful actions, including fraud, conversion, breach of fiduciary duty, and civil conspiracy;

D. For an equitable accounting of all profits, revenues, and financial benefits derived by Defendants from Plaintiff's ownership interest, labor, and contributions to BBE, with a mandate to provide full transparency and disclosure of all relevant records;

E. For the imposition of a constructive trust over all assets, profits, revenues, and property derived from Plaintiff's ownership interest and contributions, ensuring that Defendants do not retain the benefits of their wrongful conduct;

F. For injunctive relief preventing Defendants from engaging in further wrongful conduct, including the misappropriation of Plaintiff's contributions, exploitation of Plaintiff's ownership interests, or use of Plaintiff's intellectual property and work product;

G. For pre-judgment and post-judgment interest on all monetary damages awarded, as permitted by law, to ensure Plaintiff is fully compensated for the time value of his losses;

H. For an award of reasonable attorneys' fees, costs, and other litigation expenses incurred in prosecuting this action, to the fullest extent permitted by law or equity;

I. For declaratory relief affirming Plaintiff's rightful claims to compensation, restitution, and restoration of his ownership interest in BBE, and confirming Defendants' liability for their wrongful acts;

J. For restitutionary damages in an amount sufficient to compensate Plaintiff for the full value of his 25% ownership interest in BBE, including any interest or profits derived therefrom, or in the alternative, its current appraised value;

K. For an order requiring Defendants to produce and disclose all financial records, communications, and agreements related to Plaintiff's ownership interest and contributions to BBE, to ensure transparency and accountability;

L.  For an order enjoining Defendants from any further fraudulent, conspiratorial, or wrongful actions involving Plaintiff's property, contributions, or professional reputation; and

M.  For such other and further relief as the Court deems just, equitable, and proper, including any relief necessary to restore Plaintiff to his rightful position and address the harm caused by Defendants' unlawful conduct.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims triable as of right.

DATED: February 26, 2025,                                              Respectfully Submitted,

_____***/s/Tyrone A. Blackburn, Esq.***_

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com

## DEMAND FOR INSURANCE COVERAGE

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

DATED: February 26, 2025,                                              Respectfully Submitted,

_____***/s/Tyrone A. Blackburn, Esq.***_

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com

## PRESERVATION NOTICE

The terms "you," "your," or "yours" as used herein shall refer to the recipient of this letter, including but not limited to the respondents and any individuals responsible for the custody and control of the information detailed below. This includes administrative assistants, secretaries, agents, employees, information technology personnel, and any third-party vendors who may possess relevant data.

From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information described herein. Any such alteration, destruction, or modification—whether intentional or accidental—may result in sanctions and legal claims for spoliation. Failure to comply with these directives may subject you to discovery rule violations, severe penalties, and potential liability.

**Electronically Stored Information (ESI)**

You are specifically directed to preserve all electronically stored information (ESI) related to this matter. This includes, but is not limited to:

- Web pages, virtual profiles, and social media accounts (e.g., Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm, or any other platform or networking site);
- Emails, voice messages, text messages, instant messages, or messaging system data;
- Digital recordings, media files (e.g., images and videos), temporary memory, portable memory devices (e.g., USB drives, memory sticks, external hard drives), laptops, computers, CDs, DVDs, and other storage devices;
- Databases, computer activity logs, internet browsing history (including cookies), network access logs, and server activity logs;
- Word processing files, file fragments, backup and archival files, imaging and facsimile files, and contact/relationship management data (e.g., Microsoft Outlook);
- Electronic calendar and scheduling program files, spreadsheet files, and file fragments; and
- Any other electronic data or metadata pertaining to this matter.

You are further directed to take immediate steps to suspend any processes that may modify or delete this data, including data compression, disk optimization, or fragmentation. Such processes must be halted until all relevant data is preserved, copied, and made available for production.

Moreover, you must preserve all passwords, decryption tools (including necessary decryption software), network access codes, manuals, tutorials, and any other information required to access, view, or reconstruct the electronic data.

**Paper-Based Information**

You are directed to preserve all physical documents, including but not limited to:

- Emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative materials, and other records related to this controversy;
- Any handwritten notes, signatures, annotations, or other unique markings on paper documents that may not exist in digital form.

This obligation includes ensuring that all relevant paper records remain intact, unaltered, and accessible for the duration of this matter.

## Discovery Obligations

Through discovery, we will seek access to all documents and data, including but not limited to text messages, emails, photographs, and other information stored on electronic devices or paper records. Your obligation to preserve this information arises independently of any court order and must be maintained until the resolution of this matter.

Given the unique nature of electronic documents and their associated metadata, you are required to preserve them in their original electronic form. Metadata—including time stamps, authorship information, and editing history—is often critical for discovery and cannot be replicated in paper form. Paper printouts will only be accepted for documents containing unique information (e.g., handwriting, annotations, or other markings not present in the digital file).

## Legal Implications

The laws prohibiting the destruction of evidence apply equally to electronically stored information as they do to physical evidence. Electronic information is particularly vulnerable to accidental deletion or corruption, underscoring the need for immediate and thorough preservation efforts. This obligation includes discontinuing data destruction policies, backup tape recycling, and similar practices.

If any relevant electronic data is created after the date of this notice, you are required to preserve it as well. Failure to comply with this notice may result in sanctions, adverse legal consequences, and claims for spoliation of evidence.

DATED: February 26, 2025,                                          Respectfully Submitted,

                                                    */s/Tyrone A. Blackburn, Esq.*
                                                    Tyrone A. Blackburn, Esq.
                                                    T. A. Blackburn Law, PLLC
                                                    1242 E. 80th Street, 3rd Floor
                                                    Brooklyn, NY 11236-4160
                                                    P: 347-342-7432
                                                    E: tblackburn@tablackburnlaw.com

## REQUEST FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendant Janice Smalls admit or deny the following statements within the time required by law. Each request is made for the purpose of clarifying factual matters in dispute and narrowing the issues for trial. If any request cannot be admitted or denied in full, Defendant must specify the portion of the request that is true and qualify or deny the remainder.

## INSTRUCTIONS

1. Each request must be answered separately and fully in writing under oath within the time prescribed by the Federal Rules of Civil Procedure.

2. If you deny any part of a request, you must set forth in detail the reasons for such denial.

3. If you lack knowledge or information sufficient to admit or deny, you must state that fact and explain the efforts made to obtain the information necessary to respond.

4. If you partially admit a request, you must specify which part you admit and which part you deny.

5. If a request is objected to in whole or in part, you must state the basis for the objection with specificity and respond to any portion that is not objectionable.

6. Failure to timely respond may result in the requests being deemed admitted by the Court pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure.

I. Ownership and Business Contributions

1. Admit that Plaintiff Kirk Burrowes was a co-founder of BBE ("BBE").

2. Admit that Plaintiff held a 25% ownership interest in BBE at the time of its formation.

3. Admit that Plaintiff was contractually entitled to 15% of BBE's annual profits.

4. Admit that Plaintiff personally financed certain business operations of BBE during its formative years.

5. Admit that Plaintiff served as Chief Operating Officer (COO) and General Manager of BBE.

6. Admit that Plaintiff was responsible for negotiating artist contracts, managing daily operations, and overseeing business strategy at BBE.

II. Fraudulent Transfer of Plaintiff's Ownership Interest

1. Admit that Plaintiff's 25% ownership stake was transferred without his consent.

2. Admit that you received Plaintiff's 25% ownership stake in BBE.

3. Admit that you did not provide any consideration to Plaintiff in exchange for receiving his ownership interest.

4.  Admit that you concealed from Plaintiff that you had taken control of his 25% ownership stake.

5.  Admit that you continued to falsely assure Plaintiff that he remained an owner of BBE despite knowing otherwise.

6.  Admit that you were aware that Plaintiff was contractually entitled to a 15% share of BBE's annual profits.

7.  Admit that Plaintiff never received his 15% share of profits as required by the contractual agreement.

8.  Admit that financial records were altered or withheld to prevent Plaintiff from discovering the fraudulent transfer.

III. Financial Misappropriation and Corporate Conduct

1.  Admit that you personally benefited from Plaintiff's 25% ownership interest.

2.  Admit that you received financial distributions or profits derived from Plaintiff's shares.

3.  Admit that BBE corporate funds were used for unauthorized personal expenses.

4.  Admit that corporate funds were diverted for personal real estate transactions.

5.  Admit that you engaged in deceptive financial practices to withhold profits from Plaintiff.

6.  Admit that you failed to disclose profit-sharing distributions to Plaintiff.

IV. Fraudulent Misrepresentations and Concealment

1.  Admit that you knowingly misrepresented material facts to Plaintiff regarding his ownership interest.

2.  Admit that you told Plaintiff, as recently as 2020, that you had no knowledge of the transfer of his shares.

3.  Admit that you intentionally withheld critical business records and financial disclosures from Plaintiff.

4.  Admit that you deliberately provided false assurances to Plaintiff to prevent him from filing legal claims sooner.

5.  Admit that you told third parties that Plaintiff no longer had an ownership interest in BBE while simultaneously concealing this fact from him.

6.  Admit that you actively misled Plaintiff about his financial rights within BBE.

7.  Admit that you knew Plaintiff was financially struggling and relied on your false assurances.

V. Tolling of the Statute of Limitations

1.  Admit that Plaintiff was unaware of the fraudulent transfer of his shares until 2024.

2. Admit that you took affirmative steps to conceal the transfer and prevent Plaintiff from discovering it.

3. Admit that the fraudulent concealment of records delayed Plaintiff's ability to seek legal recourse.

4. Admit that you deliberately misled Plaintiff into believing he would eventually be compensated to prevent him from taking earlier legal action.

5. Admit that as recently as 2019, you falsely represented to Plaintiff that his ownership rights would be reinstated.

   VI. Legal and Equitable Relief

1. Admit that Plaintiff is entitled to an accounting of all profits, distributions, and assets related to his 25% ownership stake.

2. Admit that Plaintiff is entitled to repayment of his 15% share of profits from BBE's inception to present, with interest.

3. Admit that Plaintiff is entitled to a constructive trust over any assets derived from his misappropriated shares.

4. Admit that Plaintiff is entitled to a forensic financial audit of BBE's financial records.

5. Admit that Plaintiff has suffered financial and reputational harm as a direct result of the fraudulent transfer.

6. Admit that you deliberately obstructed Plaintiff's efforts to reclaim his ownership interest.

7. Admit that you knowingly participated in a scheme to deprive Plaintiff of his rightful ownership and financial benefits.

8. Admit that Plaintiff is entitled to damages for the fraudulent misrepresentation and concealment you engaged in over multiple decades.

## CONCLUSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Smalls is required to admit or deny each request individually, with any denial being accompanied by an explanation if the request is not admitted in full. Failure to respond within the statutory period may result in these matters being deemed admitted.

DATED: February 26, 2025,                                      Respectfully Submitted,


                                                    _____*/s/Tyrone A. Blackburn, Esq.*_
                                                    Tyrone A. Blackburn, Esq.
                                                    T. A. Blackburn Law, PLLC

1242 E. 80th Street, 3rd Floor<br>
Brooklyn, NY 11236-4160<br>
P: 347-342-7432<br>
E: tblackburn@tablackburnlaw.com

**FIRST SET OF DISCOVERY DEMANDS AND INTERROGATORIES**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Plaintiff Kirk Burrowes hereby serves the following First Set of Interrogatories and Requests for Production of Documents upon Defendant Janice Smalls. Defendant is required to respond fully, in writing, under oath, and produce all requested documents within 30 days of service, in accordance with the Federal Rules of Civil Procedure.

**GENERAL INSTRUCTIONS**

1. Responses must be made under oath and signed by the Defendant in accordance with Rule 33(b)(3) and Rule 34(b)(2) of the Federal Rules of Civil Procedure.

2. If any request is objected to in whole or in part, Defendant must state the grounds for the objection and respond to the extent the request is not objectionable.

3. If Defendant does not have personal knowledge sufficient to respond, she must conduct a reasonable inquiry to obtain the necessary information.

4. If any requested document is withheld based on a claim of privilege, Defendant must identify the document in a privilege log specifying the nature of the privilege being asserted.

5. If a document is no longer in Defendant's possession, Defendant must state when and why the document was removed or destroyed and identify the person(s) who last had control over it.

6. All electronically stored information ("ESI") responsive to these requests must be produced in native format with accompanying metadata.

7. Failure to timely respond may result in motions to compel and sanctions under Rule 37 of the Federal Rules of Civil Procedure.

**INTERROGATORIES**

I.   <u>Ownership and Business Contributions</u>

1. Identify all persons with knowledge of Plaintiff's ownership interest in BBE, including dates, discussions, and any supporting documentation.

2. State whether Plaintiff held a 25% ownership interest in BBE, and if denied, provide the basis for your denial.

3. Identify all financial distributions or profit-sharing payments made by BBE to any shareholders from 1992 to present.

4. Identify all contracts, agreements, or internal communications related to Plaintiff's 25% ownership interest and 15% profit share.

   II. <u>Fraudulent Transfer of Plaintiff's Ownership Interest</u>

5. State whether you received Plaintiff's 25% ownership stake, and if so, explain the circumstances under which you obtained control over it.

6. Identify all persons involved in or aware of the transfer of Plaintiff's ownership interest, including lawyers, accountants, or corporate officers.

7. Provide a detailed explanation of any consideration you provided in exchange for receiving Plaintiff's ownership interest.

8. Describe any financial transactions or stock transfers related to Plaintiff's equity stake from 1992 to present.

   III. <u>Financial Misappropriation and Corporate Conduct</u>

9. Identify all corporate accounts or financial records reflecting payments or distributions derived from Plaintiff's ownership stake.

10. State whether you personally received any financial distributions associated with Plaintiff's equity stake, and if so, provide details.

11. Identify any corporate funds or assets used for personal expenses, real estate transactions, or unauthorized expenditures.

12. State whether BBE maintained financial records reflecting Plaintiff's equity stake and profit entitlements, and if any records were altered or destroyed, explain why.

    IV. <u>Fraudulent Misrepresentations and Concealment</u>

13. State whether you ever told Plaintiff that he remained an owner of BBE and if so, explain the basis for your statements.

14. Identify all communications, written or verbal, between you and Plaintiff regarding his ownership interest, profit distributions, or any representations made.

15. Identify all financial statements, shareholder reports, or corporate records that were provided to Plaintiff regarding his ownership interest and explain any discrepancies.

16. State whether you ever directed or participated in altering financial records to conceal Plaintiff's equity stake and if so, provide details.

VII.    Tolling of the Statute of Limitations

17. State whether you intentionally withheld financial records or other material information from Plaintiff to prevent him from discovering the fraudulent transfer.

18. Identify all communications or discussions where you reassured Plaintiff that he would be compensated for his ownership interest or profit share.

19. Explain why Plaintiff was unable to discover the fraudulent transfer of his ownership interest until 2024.

20. Identify any actions taken to prevent Plaintiff from asserting his legal rights, including misleading statements, withheld records, or misrepresentations.


**REQUESTS FOR PRODUCTION OF DOCUMENTS**

I.   Corporate and Financial Records

1.  Produce all corporate formation documents, shareholder agreements, bylaws, and stock certificates related to BBE.

2.  Produce all financial records, tax filings, and balance sheets for BBE from 1992 to present.

3.  Produce all documents showing payments or financial distributions from BBE, including those made to you.

4.  Produce all bank statements, wire transfers, and accounting records reflecting financial transactions involving Plaintiff's ownership interest.

II.  Communications and Correspondence

5.  Produce all emails, text messages, and written communications between you and Plaintiff regarding his ownership interest, profit-sharing entitlements, or stock transfers.

6.  Produce all communications with third parties (e.g., attorneys, accountants, corporate officers) regarding Plaintiff's equity stake and financial claims.

7.  Produce all letters, memos, or legal opinions discussing the legitimacy of Plaintiff's ownership interest or any planned stock transfers.

III. Evidence of Fraudulent Misrepresentations and Concealment

8.  Produce all corporate records, meeting minutes, or internal memos that discuss Plaintiff's ownership interest and any decisions made regarding its transfer.

9.  Produce all documents, reports, or legal filings related to the transfer of Plaintiff's ownership interest.

10. Produce any privilege logs for withheld documents, including those related to financial transactions and corporate records.

IV. <u>Evidence Supporting Tolling of the Statute of Limitations</u>

11. Produce all documents reflecting discussions or assurances given to Plaintiff regarding his ownership rights from 1996 to present.

12. Produce any fraudulent or misleading financial disclosures that omitted Plaintiff's ownership interest.

13. Produce all corporate resolutions, shareholder meeting minutes, or agreements executed after Plaintiff's removal.

## **<u>CERTIFICATION</u>**

Defendant must respond to these discovery requests in accordance with Rules 26, 33, and 34 of the Federal Rules of Civil Procedure. Each interrogatory must be answered fully, and all requested documents must be produced unless an objection is stated with specificity. Failure to comply may result in a motion to compel and sanctions pursuant to Rule 37.

DATED: February 26, 2025,                                      Respectfully Submitted,

**_/s/Tyrone A. Blackburn, Esq._**
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236-4160
P: 347-342-7432
E: tblackburn@tablackburnlaw.com