

# T. A. BLACKBURN LAW

TYRONE A. BLACKBURN

MEMBER OF
NY & NJ BAR

FEDERAL DISTRICT COURT MEMBERSHIP
EDNY, NDNY, SDNY & DNJ

FEDERAL APPELLATE COURT MEMBERSHIP
SECOND CIRCUIT

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

November 9, 2025

**Sent via e-Courts**:
Hon. Jennifer H. Rearden, USDJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007

Re: *Kirk Burrowes v. Janice Smalls* et al.
Case No.: 1:25-cv-01618 (JHR)

Plaintiffs First Amended Complaint

Dear Judge Rearden:

I write in response to Defendant's November 7, 2025, letter (ECF No. 22). While Defendant devotes five pages to procedural objections, personal attacks, and factual misrepresentations, her letter conspicuously avoids any discussion of the substantive merits of Plaintiff's First Amended Complaint. This strategic silence speaks volumes—Defendant cannot challenge the Amended Complaint's comprehensive defeat of every ground in her Motion to Dismiss.

I. **DEFENDANT'S CENTRAL FACTUAL ASSERTION IS DEMONSTRABLY FALSE**

  A. Documentary Evidence Proves Janice Smalls Held Equity Interest in Bad Boy

   Defendant's Claim (p.2): "Defendant never held an equity interest or operational role in Bad Boy Entertainment."

   The Documentary Evidence (**Exhibit A**): On August 13, 1993, Defendant Janice Smalls signed the Arista Records/Bad Boy Entertainment agreement on behalf of "BAD BOY ENTERTAINMENT, INC." and included the company's Federal I.D. #13-3669846, confirming her ownership and control of the entity. The signature page states:

"ACCEPTED AND AGREED:
BAD BOY ENTERTAINMENT, INC.
Federal I.D. #13-3669846





## T. A. Blackburn Law

/s/ Janice Smalls
Janice Smalls"

This contemporaneous 1993 document—signed by Defendant herself—directly contradicts her current assertion that she "never held an equity interest" in Bad Boy Entertainment. One does not sign major record label agreements on behalf of a corporation, providing its Federal I.D. number, unless one holds an ownership or controlling interest in that entity.

Notably, the Plaintiff only discovered this document in 2024, when his prior counsel found it through a PACER litigation search. It was filed as an exhibit in *Bridgeport Music, Inc. v. Estate of Christopher Wallace*, Case No. 3:05-cv-00155 (M.D. Tenn.). This document was not publicly available through ordinary corporate records searches. It was buried in decades-old federal litigation in Tennessee—precisely the type of "active concealment" that tolls statutes of limitations, as recognized in *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155 (2d Cir. 2012).

B. <u>Janice Smalls Was Never a Defendant in Either Prior Lawsuit</u>

In 2024, Plaintiff discovered that Janice Smalls was not merely a "nominee" but rather personally and directly held Plaintiff's 25% ownership interest in her own right. This discovery— that she was the actual wrongdoer, not just a strawman for her son. Before the 2024 discovery, the Plaintiff was homeless and therefore unable to discover this.

Defendant's assertion that "allegations have been adjudicated in two prior lawsuits against her son" (Defense Letter, p.1) is equally false. First, the prior litigations were not decided on the merits. Second, Janice Smalls was never named as a defendant in the prior complaints because she had always hidden the facts that she was directly involved from the Plaintiff.

Finally, the Plaintiff could not have sued Janice Smalls when he believed her assertions that she had no involvement in the scheme to force the Plaintiff to turn over his 25% equity shares. For years, Ms. Smalls pretended to be a victim of Sean Combs herself, and she knew that Plaintiff believed her because Plaintiff had personally witnessed Sean Combs verbally and physically assault Ms. Smalls.

There is no res judicata when:

1. The Defendant was not a party (*Montana v. United States*, 440 U.S. 147, 154 (1979)).
2. The Plaintiff did not know the Defendant was the wrongdoer (*Koch*, 699 F.3d at 155); and





3. The Defendant actively concealed her role (the 1993 contract was hidden in Tennessee litigation; false denials were made in 2019-2021).

II. **DEFENDANT'S SERVICE TIMING CLAIMS ARE CONTRADICTED BY THE RECORD**

A. <u>Defendant's Counsel Requested Waiver of Service in March 2025</u>

<u>Defendant's Claim (p.1)</u>: "The Complaint went unserved on Defendant for almost four months." The Facts (attached as **Exhibit B**): On March 7, 2025, Defendant's prior counsel, Natlie Figgers, initiated contact, writing:

> " I represent Janice Combs. To avoid unnecessary costs and delays... I am willing to waive service of process..."

This email—sent 11 days after the Complaint was filed—proves that Defendant's counsel affirmatively requested waiver of service to "avoid unnecessary costs and delays." I accommodated this request.

B. <u>Plaintiffs Counsel Extended Professional Courtesy While Counsel Attended Sean Combs' Criminal Trial</u>

On May 20, 2025, when Defendant's counsel (Ms. Figgers) notified me that she was "out of the office" and needed until Friday, I responded:

> "That is no problem... I may have seen you last week during opening arguments in Sean Combs' criminal trial. Unfortunately, I did not see your initial email then... Enjoy your week."

This email—which Defendant's current counsel conspicuously omits—demonstrates that I was aware Defendant and her counsel were occupied with Defendant's son's criminal trial and voluntarily extended professional courtesy to accommodate her schedule. The Defendant cannot now claim prejudice from the timing she controlled.

C. <u>September Communications Confirm Family Emergency</u>

Defendant's Exhibit B confirms the family emergency I explained to chambers. On September 10, I explicitly informed defense counsel: "I just returned yesterday. I sent you an email asking for a slight extension before I left, but I did not hear back."

This corroborates that: (1) I requested an extension before leaving; (2) defense counsel never responded; (3) I had been away dealing with a family emergency; and (4) I immediately addressed the matter upon return. The Defendant's own exhibits support my explanation of extraordinary family circumstances.

///
///





D. <u>September 18 Refusal Demonstrates Lack of Reciprocal Courtesy</u>

On September 18—19 days after my initial request and 8 days after I explained the family emergency—defense counsel refused any extension, claiming "prejudice" to an 84-year-old woman. If the Defendant truly believes the case has no merit, a brief delay to file an amended complaint, followed by a motion to dismiss, causes no actual prejudice.

The real prejudice is to the Plaintiff, who granted Defendant nearly six months during her son's criminal prosecution, only to be denied three days during a family tragedy.

### III.   PROCEDURAL ISSUES HAVE STRAIGHTFORWARD LEGAL RESPONSES

A. <u>Rule 15(a)(2) and Good Cause</u>

<u>Defendant's Claim (p.3)</u>: Amendment improper without consent or leave. The Court's August 12 Order granted permissive leave. Rule 15(a)(2): courts should "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

1. <u>Court Already Granted Leave</u>: The Court's August 12, 2025, Order stated Plaintiff "may file an amended complaint by no later than August 29, 2025," granting permissive leave to amend.
2. <u>Good Cause Exists</u>: Rule 15(a)(2) instructs courts to "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court emphasized that, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility," leave should be "freely given." *Id.*

Here:
- <u>No bad faith</u>: Family emergencies beyond my control, immediately communicated to counsel.
- <u>No prejudice</u>: Motion to Dismiss remains pending; Defendant can file supplemental brief.
- <u>Not futile</u>: Amended Complaint comprehensively addresses every deficiency and defeats Motion to Dismiss.

Undue delay alone is insufficient. *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011).

B. <u>Local Rule 15.1(a) Redline Requirement</u>

Defendant's Claim that the amended Complaint violated the redline requirement. Plaintiff has attached the redlined version to this filing. See attached, **Exhibit C**, the redlined amended Complaint.

///



C. "Meritorious Defense" Standard Is Inapplicable

Defendant's Claim that Plaintiff must "demonstrate... a meritorious defense" is grossly misplaced. This standard applies to motions to vacate default judgments under Rule 60(b). *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). There is no default judgment here. The Defendant misconstrues both the procedural posture and the applicable legal standard.

IV.   **PERSONAL ATTACKS ARE IMPROPER AND IRRELEVANT**
Defendants attempt to distract and deflect by making ad hominem attacks against plaintiff counsel because they cannot defend Ms. Small's actions. I will not waste a minute of my time responding.

V.   **THE MERITS: DEFENDANT'S CONSPICUOUS SILENCE**
Defendant's letter fails to address any substantive argument:

- A. 2024 Discovery Rule: Plaintiff didn't discover until 2024 that Defendant personally held shares. Exhibit D—1993 Arista contract—was hidden in Tennessee litigation and was discovered only through a 2024 PACER search. Defendant does not challenge this.
- B. Independent 2019-2021 Documentary Fraud: New fraud 2019-2021 = timely claims. Defendant does not address.
- C. Fed. R. Civ. P. 9(b) Compliance: Four specific false statements satisfy the heightened standard. Defendant does not challenge.
- D. Personal Jurisdiction: Eight bases, including continuing benefits from a NY corporation. Defendant does not address.

VI.   **DEFENDANT'S DENIALS PROVE THE NEED FOR DISCOVERY**
The more Defendant Smalls tries to deny and deflect, the more she proves Plaintiff's point that this case must move forward to discovery. Defendant now claims she "never held an equity interest" in Bad Boy Entertainment. Yet Exhibit A—her own signature on the 1993 Arista Records agreement with Bad Boy's Federal I.D. #13-3669846—proves otherwise. This creates a genuine dispute of material fact that cannot be resolved on a motion to dismiss.

If Defendant truly "never held an equity interest," she should welcome the opportunity to produce:

- Corporate records showing ownership structure 1993-present.
- Tax returns reflecting (or not reflecting) Bad Boy income.
- Banking records showing (or not showing) profit distributions.
- Communications with Sean Combs regarding ownership.



- Documents explaining why she signed the 1993 Arista agreement with BBE's Federal I.D. if she had "no equity interest".

VII. **CONCLUSION**

Defendant's letter contains demonstrably false assertions:

1. "Never held equity interest" - Exhibit A (1993 Arista contract) proves she signed as a BBE owner with Federal I.D. # 13-3669846.
2. "Allegations adjudicated in two prior lawsuits" - Plaintiff was never a defendant.
3. Service delayed "almost four months" - Exhibit B proves her counsel requested a waiver in March and never returned the signed waiver. The signed waiver was returned by Jonathan Davis only after the Plaintiff threatened to serve the Defendant when she entered the courthouse for Sean Comb's criminal case.
4. Prejudice from timing - The Record shows Plaintiff extended substantial courtesy during Sean Combs' trial.

Most significantly, Defendant offers no substantive response to the Amended Complaint's legal arguments. Her contradictory positions and documentary evidence demonstrate genuine disputes of material fact requiring discovery.

Respectfully requested:

1. Accept First Amended Complaint.
2. Deny the request to strike or dismiss.
3. Deny Motion to Dismiss and permit the case to proceed to discovery.

.

Respectfully Submitted,

/s/*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

Cc: All counsel of record via ECF.

